[L. A. No. 25291. In Bank. Aug. 5, 1959.]

GRUNWALD-MARX, INC. (a Corporation), Respondent, v. LOS ANGELES JOINT BOARD, AMALGAMATED CLOTHING WORKERS OF AMERICA, Appellant.

Wirin, Rissman & Okrand, Fred Okrand and William J. Isaacson for Appellant.

Hill, Farrer & Burrill, Hyman Smith and Ray L. Johnson, Jr., for Respondent.

PETERS, J.—This is an appeal by the defendant, the Los Angeles Joint Board, Amalgamated Clothing Workers of America (hereafter referred to as the "Union") from a judgment and order confirming an award and supplemental award of arbitrators (one arbitrator dissenting), and denying the Union's motion to vacate, modify and correct said awards.

On December 1, 1955, the plaintiff, Grunwald-Marx, Inc. (hereafter referred to as the "Company") filed a petition in the superior court for an order directing arbitration. The petition alleged that the Company and the Union on *October 1, 1953,* entered into a written contract which recognized the Union as the exclusive bargaining representative of the Company's employees, and which covered wages, hours and working conditions of the employees. A copy of this contract was annexed to the petition and made a part thereof.

Three provisions of that contract are here relevant. Paragraph 12 provides that the Company shall contribute sums of money equal to a stated percentage of its payroll to the Union's insurance fund. Paragraph 14 provides that all complaints, grievances or disputes arising between the parties relating directly or indirectly to the provisions of the agreement not settled by negotiation shall be submitted to arbitration, before a board of three arbitrators. Paragraph 19 provides that the Union agrees to grant to the Company the same terms and conditions granted by the Union to any other garment manufacturer "and that any terms and conditions more favorable than the above entered into with any other garment manufacturer shall be available to the . . . [Company]. If such more favorable conditions are permitted . . . then the same conditions shall be available to the parties to this contract. The Union agrees to give information to the . . . [Company] as to the terms given to others on request."

The petition next alleges that the Union violated this last provision by waiving for a period of approximately six months the payments due to the insurance fund from the Banning Shirt Corporation,[1] but failed to waive such payments due from the Company for the six-month period, or at all. The petition also alleges that the Company demanded the same treatment afforded the Banning Shirt Corporation, but the Union refused the demand, and that the Company has been informed and believes and alleges that the Union has afforded

[1]The petition describes this company as the Banning Plant of the Pacific Manufacturing. The correct name of this corporation is the Banning Shirt Corporation.

other employers the same favorable treatment afforded the Banning Shirt Corporation, but the Union after demand has refused to give to the Company the information as required by paragraph 19 of the contract. The petition next alleges that on November 9, 1955, the Company, in writing, requested the Union to proceed with arbitration of the dispute as provided in the contract, but the Union refuses to arbitrate.

The Union moved to dismiss on the ground that the superior court had no jurisdiction to consider the petition, and also filed a general and special demurrer. In support of the motion to dismiss, the Union, by affidavit, averred that the Company is engaged in interstate commerce within the meaning of the National Labor Relations Act; that prior to filing the instant petition the Company had filed with the National Labor Relations Board a charge that the Union was engaging in unfair labor practices within the meaning of section 8(b)(3) of the National Labor Relations Act (29 U.S.C.A. § 158(b)(3)); that the unfair labor practices charged are unfair labor practices affecting commerce within the meaning of the act, and that the Union has refused to bargain. A copy of the charge filed by the Company with the National Labor Relations Board is attached to the Union's supporting affidavit. It is also averred in that affidavit that ''the National Labor Relations Board has not declined, but in fact has assumed and is now exercising jurisdiction over the present controversy'' between the Company and the Union. These claims were not controverted by the Company.

The trial court denied the motion to dismiss and overruled the Union's demurrers. The Union then filed its answer, again raising the jurisdictional question, and setting up the defense that the matter was not subject to arbitration. The trial court found ''that the issues presented by petitioner [Company] for adjudication to the National Labor Relations Board are not the same as those which constitute the controversy and dispute in the instant petition,'' and directed the Company and the Union to arbitrate.

Pursuant to this direction the arbitration was held. A majority of the arbitrators (one dissenting) found that the Union and Company had entered into several contracts, one in 1947 and one in 1953, and that, as the Union contended, arbitration was ordered only as to disputes arising under the 1953 contract. The award provides, however, that ''we think the facts show a violation of that contract [1953] as well as of the 1947 contract. Since the union had allowed the Banning Plant a

six-month waiver of payments, it was obligated to make a waiver to the Employer for the same period. This not having occurred, the Employer started operation under the 1953 contract with a credit balance, which it could legitimately have applied until exhausted in satisfaction of its obligation under Article 12 of the 1953 contract. The Union's continued exaction of new payments was a continuing violation, now of the 1953 contract, and the Employer has properly raised the issue as a violation of the 1953 agreement.''

On November 9, 1956, prior to the issuance of the award by the arbitrators, but after a tentative award had been drafted and was under consideration, the Union filed with the arbitrators a motion to reopen the hearing. The Union requested permission now to place in evidence the contract in effect between it and the Banning Shirt Corporation during the time of the alleged waiver of insurance premiums, and requested permission to produce additional evidence to show that the Banning Shirt Corporation had in fact received only a partial waiver and not a blanket waiver. Thus, at this late date, the Union wanted to reopen the arbitration to show that in fact the Company had not been discriminated against. This, of course, was the basic issue that had been submitted to the arbitrators. The motion to reopen was denied, first, because the waiver to the Banning Shirt Corporation had been admitted in the pleadings of the Union in the action to compel arbitration, and so was not open to arbitration, and second, that the application came too late because the Union had had these facts in its possession at all times during the original hearing, but had failed to offer them. No showing of surprise or excusable neglect was made.

On March 14, 1957, the award of the arbitrators was issued. The Union was ordered to return to the Company the premiums which the latter had paid into the insurance fund during the six-month period from July 18, 1952, to January 18, 1953. A supplemental award was issued on June 20, 1957, finding that the amount due was $8,896.43. The Union was directed to pay that amount.

Thereafter the Company filed in the superior court a timely motion to confirm, and the Union filed its motion to vacate, modify and correct. The court granted the Company's motion and denied that of the Union. The Union thereupon prosecuted this appeal.

The basic question presented on this appeal is whether the superior court had jurisdiction to entertain the action to

compel arbitration. This depends upon whether the National Labor Relations Act pre-empts state jurisdiction over the controversy.

A few preliminary remarks are appropriate. In our dual federal-state system clashes between federal and state jurisdiction are inevitable. Nowhere is this conflict more evident and vital than in the field of industrial relations, particularly since the passage of the National Labor Relations Act. ▮ By the enactment of that statute the federal government undoubtedly pre-empted exclusive jurisdiction over certain controversies in the industrial field that affect interstate commerce. But it is equally certain that by that statute the federal government did not pre-empt full jurisdiction in this field. Stated another way, the National Labor Relations Act and subsequent statutes in this field do not cover the entire field, but leave to the states power to control many phases of industrial relations involving employers or unions engaged in or affecting interstate commerce. The difficulty comes from the fact that the Congress, and the United States Supreme Court in interpreting the statute, have carefully refrained from stating how much power has been retained by the states and how much of the field has been pre-empted by the federal government. As specific problems are presented, the United States Supreme Court, step by step, determines whether or not the specific problem falls within or without the pre-empted field. This slow and painful process sometimes leads to confusion. Broad statements made in a particular case must always be related to the facts of that case and to the particular problem involved.

Some of these problems were recently discussed by the high court in its decision in *San Diego Building Trades Council* v. *Garmon*, 359 U.S. 236 [79 S.Ct. 773, at page 776, 3 L.Ed.2d 775], as follows:

"The issue is a variant of a familiar theme. It began with *Allen-Bradley Local No. 1111, etc.* v. *Wisconsin Employment Relations Board*, 315 U.S. 740 [62 S.Ct. 820, 86 L.Ed. 1154], was greatly intensified by litigation flowing from the Taft-Hartley Act, and has recurred here in almost a score of cases during the last decade. The comprehensive regulation of industrial relations by Congress, novel federal legislation twenty-five years ago but now an integral part of our economic life, inevitably gave rise to difficult problems of federal-state relations. To be sure, in the abstract these problems came to us as ordinary questions of statutory construction. But they in-

volved a more complicated and perceptive process than is conveyed by the delusive phrase, 'ascertaining the intent of the legislature.' Many of these problems probably could not have been, at all events were not, foreseen by the Congress. Others were only dimly perceived and their precise scope only vaguely defined. This Court was called upon to apply a new and complicated legislative scheme, the aims and social policy of which were drawn with broad strokes while the details had to be filled in, to no small extent, by the judicial process. Recently we indicated the task that was thus cast upon this Court in carrying out with fidelity the purposes of Congress, but doing so by giving application to congressional incompletion. What we said in *Weber* v. *Anheuser-Busch, Inc.*, 348 U.S. 468 [75 S.Ct. 480, 99 L.Ed. 546], deserves repetition, because the considerations there outlined guide this day's decision:

" 'By the Taft-Hartley Act, Congress did not exhaust the full sweep of legislative power over industrial relations given by the Commerce Clause. Congress formulated a code whereby it outlawed some aspects of labor activities and left others free for the operation of economic forces. As to both categories, the areas that have been pre-empted by federal authority and thereby withdrawn from state power are not susceptible of delimitation by fixed metes and bounds. Obvious conflict, actual or potential, leads to easy judicial exclusion of state action. Such was the situation in *Garner* v. *Teamsters Union, supra* [346 U.S. 485, (74 S.Ct. 161, 98 L.Ed. 228)]. But as the opinion in that case recalled, the Labor Management Relations Act "leaves much to the states, though Congress has refrained from telling us how much." 346 U.S. at page 488, 74 S.Ct. at page 164. This penumbral area can be rendered progressively clear only by the course of litigation.' 348 U.S. at pages 480-481, 75 S.Ct. at page 488."

When a state court is called upon to determine whether a particular controversy is within state jurisdiction or is in the pre-empted field, except as to those relatively few controversies already passed on by the United States Supreme Court, the best that the state court can do, sans guide from the higher tribunal, is to make an informed guess on the subject. This guess must be predicated upon cases already decided, which sometimes contain conflicting generalities and apparently conflicting dicta, and upon an analysis of the basic purposes of the National Labor Relations Act and the presumed intent of the Congress.

The instant case presents a problem as to jurisdiction not yet directly passed upon by the United States Supreme Court. It will be of assistance if that problem is defined.

The petition filed in the superior court to compel arbitration charges a breach of contract—that is, that the Company and Union entered into a collective bargaining agreement; that such agreement contained a "most favored nations" clause; that the Union has breached that contract by granting to the Banning Shirt Corporation more favorable treatment as to payments into the insurance fund than granted to the Company. Thus, breach of the "most favored nations" clause is the gist of the action. The relief demanded is submission of the controversy to arbitration as provided in the collective bargaining agreement.

In the petition before the National Labor Relations Board the Union is charged with a violation of section 8 (b)(3) of the National Labor Relations Act. That subdivision provides that it is an unfair labor practice for a labor organization or its agents "to refuse to bargain collectively with an employer, provided it is the representative of his employees subject to the provisions of section 159(a) of this title." (29 U.S.C.A. § 158(b)(3).) In support of this charge it is alleged that the Union has waived for a competitor of the Company payments into the insurance fund; that this violated the "most favored nations" clause of the agreement; that the Union has refused to furnish the Company with facts and figures concerning this waiver of payments; and that the Union has refused to bargain with the Company on this controversy. Thus, the gist of this charge is the refusal to bargain collectively.

As indicated, the charge before the state court is for breach of contract and the remedy asked is arbitration. The charge before the National Labor Relations Board is the refusal to bargain collectively. The two charges relate to the same controversy. They may overlap, but they are not identical. As already pointed out, the trial court found that the issues presented to the Board were not the same as those presented to the trial court. Whether this be considered a finding or a conclusion of law, we are convinced that it is correct.

The question presented then is whether, because of such possible overlap, the state court is deprived of jurisdiction. Stated another way, the question is whether a state court has jurisdiction over a breach of a collective bargaining agreement, which breach may involve somewhat indirectly an un-

fair labor practice. We are of the opinion that, under the facts here involved, the state court had jurisdiction.

There are a substantial number of cases holding that the federal courts (as distinguished from the National Labor Relations Board) have jurisdiction where the conduct complained of—that is, the same act—constitutes both a breach of contract and an unfair labor practice. The majority of the lower federal courts have held or implied that in such a case jurisdiction has not been pre-empted. (*Lodge No. 12* v. *Cameron Iron Works,* 257 F.2d 467, cert. den. 358 U.S. 880 [79 S.Ct. 120, 3 L.Ed.2d 110] ; *Local 19, Warehouse, etc. Union* v. *Buckeye Cotton Oil Co.,* 236 F.2d 776, cert. den. 354 U.S. 910 [77 S.Ct. 1293, 1 L.Ed.2d 1428] ; *Independent Petroleum Workers of New Jersey* v. *Esso Standard Oil Company,* 235 F.2d 401; *Plumbers & Steamfitters Union, Local No. 598* v. *Dillion,* 255 F.2d 820; *Reed* v. *Fawick Airflex Co.,* 86 F.Supp. 822.) A minority of courts have held to the contrary. (*National Labor Relations Board* v. *Wagner Iron Works, etc., Local 471,* 220 F.2d 126, cert. den. 350 U.S. 981 [76 S.Ct. 466; 100 L.Ed. 850] ; *United Electrical, R. & M. Wkrs.* v. *General Electric Co.,* 231 F.2d 259, cert. den. 352 U.S. 872 [77 S.Ct. 95, 1 L.Ed.2d 76].)

This subject has frequently and thoroughly been discussed by legal writers. (See, for a few of them, Meltzer, *The Supreme Court, Congress, and State Jurisdiction over Labor Relations*: II, 59 Columb.L.Rev. 269, 283 et seq.; Danau, *Contracts and Unfair Labor Practices,* 57 Columb.L.Rev. 52; Jenkins, *The Impact of Lincoln Mills on the National Labor Relations Board,* 6 U.C.L.A. L. Rev. 355; Jenkins, *Problems of Federal-State Jurisdiction in Labor Relations,* 31 Rocky Mt. L.Rev. 315; notes, 69 Harv.L.Rev. 725; 59 Columb.L.Rev. 153, 168.)

The point was specifically left open by this court in the case of *McCarroll* v. *Los Angeles County etc. Carpenters,* 49 Cal.2d 45 [315 P.2d 322] (cert. den. 355 U.S. 932 [78 S.Ct. 413, 2 L.Ed.2d 415]). That case, however, is important to the present case for several reasons. It held that state courts have concurrent jurisdiction with the federal courts under section 301 of the Labor Management Relations Act (29 U.S.C.A. § 185).

 That case also held that a state court had the power to enjoin a strike where the strike involved was not an unfair labor practice within section 8(b) of the act (29 U.S.C.A. § 158(b)) and where the strike was in violation of a collective

bargaining agreement. ██ At page 53 this court stated: "Conduct that constitutes a breach of a collective bargaining agreement is not for that reason alone an unfair labor practice. Proposals to make breach of contract an unfair labor practice were before Congress when it enacted the Taft-Hartley law, but were specifically rejected by the conference committee on the ground that once the parties had entered into a collective bargaining agreement, enforcement should be left to the usual processes of the law and not to the National Labor Relations Board. (See *Association of Westinghouse Salaried Emp.* v. *Westinghouse Elec. Corp.*, 348 U.S. 437, 443-444 n. 2 [75 S.Ct. 488, 99 L.Ed. 510] (Mr. Justice Frankfurter concurring) ; Cox and Seidman, *Federalism and Labor Relations*, 64 Harv.L.Rev. 211, 243-245.) '' The conference report of Congress on the Taft-Hartley Act definitely demonstrates the correctness of these conclusions. It reads, in part: "Once parties have made a collective bargaining contract, the enforcement of that contract should be left to the usual processes of the law and not to the National Labor Relations Board.'' (H. Conf. Rep. No. 510, 80th Cong. 1st Sess., p. 42.)

Section 301 of the Labor Management Relations Act (29 U.S.C.A. § 185) confers upon federal courts and not upon the National Labor Relations Board, jurisdiction to entertain suits for "violation of contracts.'' In *Textile Workers Union of America* v. *Lincoln Mills of Alabama*, 353 U.S. 448 [77 S.Ct. 912, 1 L.Ed.2d 972], it was held that an action to compel arbitration pursuant to the terms of a collective bargaining agreement may be brought under section 301 in a federal court. ██ While section 301 refers only to the federal courts, it is well settled that state courts have jurisdiction to enforce federal causes of action unless Congress has specifically provided to the contrary. That was one of the basic holdings in *McCarroll* v. *Los Angeles County etc. Carpenters*, 49 Cal.2d 45 [315 P.2d 322] (cert. den. 355 U.S. 932 [78 S.Ct. 413, 3 L.Ed.2d 415]).

██ It should also be mentioned that the federal statute contains an express statement of approval and encouragement of collective bargaining agreements. (29 U.S.C.A. §§ 151, 171 and 173.) This is important, because many collective bargaining agreements contain arbitration clauses. These clauses are the expression of the intent of the parties to settle their disputes through means the parties have found to be both expeditious and efficient. The statutory policy of encouragement of collective bargaining can best be served by making

the arbitration clauses effective. Denial of state court jurisdiction, with the accompanying mandate that the sole tribunal to consider the controversy is the National Labor Relations Board, can serve no purpose other than to defeat the expressed intent of the parties, to hinder the prompt and orderly settlement of labor disputes, and to add to the burdens of an already overburdened National Labor Relations Board. Add to that that the controversy submitted to the state court involved essentially a breach of contract, traditionally a matter within state court jurisdiction, and compelling reasons exist to hold that, in the instant case, the state court has jurisdiction.

In spite of these compelling arguments, the Union contends that the recent decision (April 20, 1959) of the United States Supreme Court in *San Diego Building Trades Council* v. *Garmon*, 359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775], demonstrates that the National Labor Relations Board has exclusive jurisdiction. This case was decided after the instant case was orally argued, and at the request of this court both sides have briefed the question of the applicability or nonapplicability of that case to the instant one.

It should be pointed out that the Garmon case did not involve a breach of contract or a refusal to arbitrate. It was an action to enjoin picketing and for damages. It involved claimed tortious conduct. The trial court granted both an injunction and damages. This court affirmed. (*Garmon* v. *San Diego Bldg. Trades Council*, 45 Cal.2d 657 [291 P.2d 1].) The United States Supreme Court reversed this judgment (353 U.S. 26 [77 S.Ct. 607, 1 L.Ed.2d 618]) insofar as it granted an injunction, and remanded the case. This court, on remand, entered judgment awarding damages (49 Cal.2d 595 [320 P.2d 473]). This, too, was reversed by the decision under discussion, for the reason that it was held that the National Labor Relations Board had exclusive jurisdiction, that is, that the federal government had pre-empted jurisdiction over the tortious conduct there involved. Thus, the precise holding by the United States Supreme Court is not here applicable for the reason that we are here dealing with a breach of contract. But Mr. Justice Frankfurter, speaking for the majority of the court, did make some observations that warrant discussion.

The opinion points out that the case turns upon what activities are regulated by sections 7 and 8 of the Labor Management Relations Act (29 U.S.C.A. §§ 157-158), which are

aimed at governing protected concerted activities and unfair labor practices. After pointing out that the federal government has pre-empted jurisdiction as to those matters covered by the federal act, and emphasizing the policy behind this pre-emption, the court stated (79 S.Ct. at p. 778) : ''When the exercise of state power over a particular area of activity threatened interference with the clearly indicated policy of industrial relations, it has been judicially necessary to preclude the States from acting [citing cases]. However, due regard for the presuppositions of our embracing federal system, . . . has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. [Citing a case.] Or where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act. [Citing cases.]''

As will be pointed out later, the instant controversy falls directly within the purport and intent of this quotation.

The Supreme Court of the United States in the Garmon case then went on to say (79 S.Ct. at p. 779) : ''When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the Taft-Hartley Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. . . . to allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes. . . . When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.''

Then the United States Supreme Court pointed out that prior cases, citing them, have allowed the states to retain jurisdiction of cases involving violence and threats to the public order.

How does the Garmon case apply to the instant case ? There can be no doubt that there is language in the case that extends the pre-empted field beyond that stated to exist in prior adjudicated cases. But it is equally clear that, giving full effect to the language as well as to the holding in the case, it does not hold or imply that jurisdiction has been pre-empted in controversies such as the instant one.

As already pointed out, in the instant case the state action charges the breach of an express term of a collective bargaining agreement. Such conduct does not involve a violation of sections 7 or 8 of the act. The refusal to bargain collectively, which is the gist of the proceeding before the National Labor Relations Board, is involved, at most, indirectly in the state action. There is no obvious conflict between them. The Union contends that whenever there is a mere possibility of potential conflict between the substantive laws, remedies or procedures of the state and federal authorities, the National Labor Relations Act pre-empts jurisdiction. That assertion is too broad. The real test is to ascertain the nature of the activity or conduct that is involved. The Supreme Court of the United States was most careful to point out that in cases of violent conduct or threats to the peace, state courts have jurisdiction. Reference is also made to an area "where the activity regulated was a merely peripheral concern of the Labor Management Act." These are referred to as situations touching interests "deeply rooted" in "local feeling" or "responsibility." As to these, state jurisdiction is retained. It is true that Garmon held that when "an activity is arguably subject to § 7 or § 8 of the Act" the Board has exclusive jurisdiction in the first instance. But certainly by using the term "arguably" Mr. Justice Frankfurter did not mean to imply that a litigant can cause a state court to lose jurisdiction merely by the assertion that the particular activity is either protected by section 7 or prohibited by section 8. He must have meant "susceptible of reasonable argument." Otherwise, completely specious claims of activities within Board jurisdiction would automatically deprive state courts of jurisdiction until the Board has acted. No such result was intended. The fact that the dividing line between what is reasonably arguable and what is not, may, in some cases, be difficult to determine, is no reason for refusing to make the determination. Courts constantly make such determinations. No doubt close cases should be determined, in the first instance, to fall exclusively within Board jurisdiction. But this is not such a case.

Our analysis of the conduct here involved has already been stated. The "activity arguably subject to § 7 or § 8 of the Act," to use Mr. Justice Frankfurter's words in Garmon, is entirely distinct from the activity constituting the breach of contract. State court or arbitration resolution of the alleged breach of contract will not conflict with Board action on the

alleged unfair labor practice. Indeed, the state does not purport to regulate the latter. A Board ruling that there has not been a refusal to bargain is not inconsistent with an award of damages or other relief for a breach of contract, and conversely, a Board ruling that there has been a refusal to bargain is not in conflict with a judicial determination or determination by an arbitration board that the contract has not been breached.

We emphasize that this is not a situation where the same act constituting a breach of contract is also an unfair labor practice. As to such a situation we express no opinion.

Conflict between state and federal jurisdiction, actual or potential, is the theme of Garmon. Lack of such conflict necessarily precludes the possibility of pre-emption. State court enforcement of the contract breach is consonant and not inconsistent with the national policy of industrial relations. At the very most, the contract breach "is a merely peripheral concern" of the federal statute. Mr. Justice Frankfurter used that phrase in Garmon to describe a class of case where pre-emption did not apply. In this connection he cited *International Assn. of Machinists* v. *Gonzales*, 356 U.S. 617 [78 S.Ct. 923, 2 L.Ed.2d 1018]. The Gonzales case involved an action by an employee against a union for reinstatement and damages for lost wages and for mental and physical suffering. The United States Supreme Court upheld a judgment for the employee, specifically rejecting the argument that the state court had no jurisdiction to award damages. The high court conceded that there might have been an unfair labor practice involved so far as the acts of the union were concerned and that the National Labor Relations Board could have also awarded damages, but found the possibility too remote to cause the state to lose jurisdiction. The possibility of conflict in the present case is much more remote than such possibility in Gonzales.

The Gonzales case is important because it involved a breach of contract, and the acts constituting such breach were assumed to involve an unfair labor practice. State jurisdiction was upheld. In so holding the court stated (356 U.S. at p. 621): "If, as we held in the *Laburnum* case [*United Constr. Workers* v. *Laburnum Const. Corp.*, 347 U.S. 656 (74 S.Ct. 833, 98 L.Ed. 1025)], certain state causes of action sounding in tort are not displaced simply because there may be an argumentative coincidence in the facts adducible in the tort action and a plausible proceeding before the National Labor Rela-

tions Board, a state remedy for breach of contract also ought not be displaced by such evidentiary coincidence when the possibility of conflict with federal policy is similarly remote. The possibility of conflict from the court's award of damages in the present case is no greater than from its order that respondent be restored to membership. In either case the potential conflict is too contingent, too remotely related to the public interest expressed in the Taft-Hartley Act, to justify depriving state courts of jurisdiction to vindicate the personal rights of an ousted union member. This is emphasized by the fact that the subject matter of the litigation in the present case, as the parties and the court conceived it, was the breach of a contract governing the relations between respondent and his unions. The suit did not purport to remedy or regulate union conduct on the ground that it was designed to bring about employer discrimination against an employee, the evil the Board is concerned to strike at as an unfair labor practice under § 8 (b)(2). This important distinction between the purposes of federal and state regulation has been aptly described: 'Although even these state court decisions may lead to possible conflict between the federal labor board and state courts they do not present potentialities of conflicts in kind or degree which require a hands-off directive to the states. A state court decision requiring restoration of membership requires consideration of and judgment upon matters wholly outside the scope of the National Labor Relations Board's determination with reference to employer discrimination after union ouster from membership. The state court proceedings deal with arbitrariness and misconduct vis-à-vis the individual union members and the union; the Board proceeding, looking principally to the nexus between union action and employer discrimination, examines the ouster from membership in entirely different terms.' Isaacson, Labor Relations Law: Federal versus State Jurisdiction, 42 A.B.A.J. 415, 483." (See also 10 Hastings L. J. 306.)

The Union also argues that by filing the charge with the Board the Company waived its right to arbitrate. Reliance is placed on *Local 659, I.A.T.S.E.* v. *Color Corporation of America,* 47 Cal.2d 189 [302 P.2d 294]. So far as applicable here, that case merely indicates that pursuing another method of settling a controversy when arbitration is available, may be some evidence of an intent not to arbitrate. In the instant case there is evidence of an intent to arbitrate. The demand to arbitrate was made by the Company within a month of

filing the charge with the Board. The Company has maintained at all times that the issues before the Board are different from those in the state action. The trial court so found and such finding is supported.

Contrary to the contention of the Union, the fact that the Board actually assumed jurisdiction is of no legal consequence. It makes no difference as regards conflict or potential conflict between the Board and the state courts whether jurisdiction has been assumed or denied by the Board, or whether the Board refused to act. The question is whether or not there is a conflict. If a conflict "arguably" exists the state courts are deprived of jurisdiction. If it does not exist the state courts have jurisdiction. This was expressly so held in the Garmon case. (79 S.Ct. 773, 780.) (See also *Guss* v. *Utah Labor Relations Board*, 353 U.S. 1 [77 S.Ct. 598, 609, 1 L.Ed. 2d 601].)

On the merits the Union attacks the award in several respects.

It is first contended that the award must be vacated because the arbitrators refused "to hear evidence, pertinent and material to the controversy" in violation of section 1288, subd. (c), of the Code of Civil Procedure. Based on this section it is urged that prejudicial error was committed when the arbitrators refused to reopen the proceedings to permit the Union to present evidence of the exact terms of the contract between it and the Banning Shirt Corporation—evidence which the Union had failed to present at the time of the main hearing.

Section 1288, subd. (c), cannot be interpreted to mean that, after a hearing at which full opportunity is given to each side to produce evidence, the arbitrators, as a matter of law, must grant a motion to reopen if the proffered evidence is relevant. It is, of course, the law that a ruling on a motion to reopen is a matter of discretion with the trier of the facts, and that such discretion cannot be upset on appeal in the absence of a clear showing of an abuse of that discretion. (*Chung* v. *Johnston*, 128 Cal.App.2d 157, 166 [274 P.2d 922]; *Kaplan* v. *Hacker*, 113 Cal.App.2d 571, 573 [248 P.2d 464].) There was no abuse of discretion here. While the parties to an arbitration must be given every reasonable opportunity to present their evidence, the arbitrators are not required to admit all relevant testimony whenever it may be offered or submitted to them. The orderly administration of justice requires that, within reason, evidence must be offered at the proper time. The parties must be diligent.

 In the instant case, the waiver of insurance payments to the Banning Shirt Corporation was the key issue. That issue was the basis of the entire controversy. The Union admitted in its pleadings in the very action to compel arbitration that the payments of the Banning Shirt Corporation had been "deferred." This same admission was made at the hearing before the arbitrators. At that hearing the Union offered no evidence on the issue. It was not until the hearing was concluded and until after the arbitrators had indicated a tentative award, that the Union came forth with its request to reopen in order to show, so it is now claimed, that the waiver to Banning Shirt Corporation had only been a partial one, and that, in fact, the Company had actually received the same treatment as did Banning Shirt Corporation. Under such circumstances, there was no abuse of discretion on the part of the arbitrators when they denied the motion to reopen.

 It is next urged that the order of arbitration submitted to the arbitrators controversies arising out of the 1953 contract only. The original contract between the parties containing the insurance fund payment clause was executed in 1947. The Union construes the arbitration award as an award for breach of this 1947 contract, and therefore beyond the power of the arbitrators to make. The Union misinterprets the award. No damages were allowed for any breach of the 1947 contract. It is true that the arbitrators referred to the 1947 contract, but resort was made to the breach of the 1947 contract only in support of the finding that the 1953 contract had been violated. The majority award of the arbitrators carefully points out that the Union had only been ordered by the superior court to arbitrate disputes under the 1953 contract. The award then states that "we think the facts show a violation of that contract as well as of the 1947 contract." But the Union contends that in adopting their theory the arbitrators, in effect, rewrote the contract. It is contended that to reach the result reached by the arbitrators the arbitrators had to insert in the 1953 contract a clause reserving the right to arbitrate violations of the prior contract.

This is a misinterpretation of the award. The arbitrators did not purport to arbitrate any 1947 violations. The reasoning of the arbitrators was that, because of the breach of the 1947 contract the Company had been compelled to pay too much into the insurance fund. Although the agreement between the parties provided that contributions, once made, could not be returned to the Company, there was no provision

that precluded the Company from setting off against future payments any credit balance that might result from excessive or erroneous payments. Such a common sense provision permitting such set off is necessarily implied. The Company did not learn of the waiver to the Banning Shirt Corporation until after the 1953 contract was executed. Thus, when the 1953 contract was entered into there was a credit balance then in favor of the Company. The theory of the arbitrators was fully stated by them when they declared that "the Union's continued exaction of new payments was a continuing violation, now of the 1953 contract." That theory appears to us to be sound. To interpret the award as does the Union would place a premium on the successful concealment of contract violations. Moreover, it must be remembered that this is a review of an arbitration award. Even if the reasoning of the arbitrators were unsound, this would not invalidate the award. It is well settled that erroneous reasoning will not invalidate an otherwise proper award. (*Drake* v. *Stein*, 116 Cal.App.2d 779, 785 [254 P.2d 613] ; *McKay* v. *Coca-Cola Bottling Co.*, 110 Cal.App.2d 672, 675 [243 P.2d 35].) Arbitrators may base their decision on broad principles of justice and equity. (*Sapp* v. *Barenfeld*, 34 Cal.2d 515, 523 [212 P.2d 233].) Every intendment of validity must be given the award. (*Crofoot* v. *Blair Holdings Corp.*, 119 Cal.App.2d 156, 185 [260 P.2d 156].) Doubts must, therefore, be resolved in favor of the award here.

The Union next asserts that the award was erroneous in that the issue of damages had not been submitted to arbitration and that the arbitrators rewrote the contract by awarding damages. Neither contention is sound.

The order of the superior court directed the Company and the Union to "arbitrate the controversies now existing between them in accordance with the terms of said contract. . . ." The quoted clause obviously means "pursuant to the arbitration clause in the contract." This latter clause provides, in part, that "All complaints, grievances or disputes arising between the parties relating directly or indirectly to provisions of this agreement. . . . shall be submitted to arbitration. . . ." Damages for the breach of paragraph 19 were clearly a part of a "dispute arising between the parties." Thus, it appears that the Company's submission of the damage issue to the arbitrators was proper.

Moreover, even if the issue of damages had not been specifically submitted to the arbitrators, damages were prop-

erly included in the award. This conclusion is inherent in the reasoning of the case of *Sapp* v. *Barenfeld*, 34 Cal.2d 515 [212 P.2d 233], where an order which had vacated an award because it had failed to grant damages was reversed by this court for the reason that no proof of damage had been offered to the arbitrators. But the court clearly implied that where a contract breach has been submitted to arbitration although damages are not included expressly in the submission, if proper proof is made, damages may and should be awarded. This conclusion is in accord with common sense. All the necessary facts are before the arbitrators. All the evidence necessary on the issue was introduced. The damages are liquidated. The Union makes, and could make, no claim of surprise or prejudice. No useful purpose would be served in such a case by limiting the arbitrators to determining that there had been a breach of contract, and then relegating the parties to a new proceeding to fix damages.

■■■ The Union next contends that the award was made for the wrong period. The Union correctly points out that the findings were to the effect that the Banning Shirt Corporation had been granted a waiver of insurance payments for the first six months of that plant's operations. It is, therefore, contended that the period as to which the Company's payments should be refunded was either the first six months of *its* operation under a union contract (October, 1946, through March, 1947), or the first six months of the 1947 contract (August, 1947, through January, 1948). The award as given was for payments made during the precise period the Banning Shirt Corporation received its waiver (July, 1952, to January, 1953). The Union argues that this gave the Company more favorable, not the same, conditions as were given to the Banning Shirt Corporation.

The point lacks merit. The purpose of paragraph 19 was to maintain a competitive equality between the Company and the rest of the industry. Although the Union alleges that the waiver was given to the Banning Shirt Corporation to enable it to get off to a sound start (Banning Shirt Corporation is apparently a new company), the Union has not demonstrated that the waiver did not in fact discriminate against the Company. In the absence of such a showing, it must be assumed that during the period the waiver was given to the Banning Shirt Corporation, the Company was placed in an inferior competitive position. Damages for this period merely restored to the Company its contracted for competitive equality.

■ The next assertion of the Union is that the award violates the clause of the insurance agreement that provides that "[i]n no event will the Employer be entitled to the return of any part of any contribution made hereunder." The contract provided that the contributions were to be paid directly to the Cotton Garment Insurance Fund, a separate legal entity. The award directs the Union, not the trustees of the Fund, to pay the Company damages for the breach of the contract. The money comes out of the Union's treasury, and is not a return of any contribution made to the Fund.

■ The Company has filed in this court an application for leave to produce additional evidence pursuant to Rule 23 (b) of the Rules on Appeal. It avers that with this evidence it will demonstrate that there could not have been a conflict between the award and any ruling that the National Labor Relations Board might have made. In view of the conclusions already stated above, such evidence would serve no useful purpose. The application to produce such evidence is denied.

The judgment and orders appealed from are affirmed.

Gibson, C. J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.