[Civ. No. 25149. Second Dist., Div. One. Aug. 17, 1961.]

JAMES FULLERTON, Appellant, v. INTERNATIONAL SOUND TECHNICIANS OF THE MOTION PICTURE, BROADCAST AND AMUSEMENT INDUSTRIES LOCAL 659, etc., et al., Respondents.

Thomas H. Ludlow, Jr., for Appellant.

Bodkin, Breslin & Luddy and Michael G. Luddy for Respondents.

LILLIE, J.—Plaintiff appeals from a judgment on the pleadings dismissing the second and sixth causes of action of his complaint; only the union defendants are respondents herein.

On September 1, 1955, plaintiff sued defendant union and certain of its officers and various employer-producers of motion picture and television films in six separate causes of action—the first, for injunctive relief, the remaining five, for damages for wrongful interference with his right to work; he alleged in each cause that the action of defendant union constituted an unfair labor practice contrary to section 8 of the National Labor Relations Act. Upon institution of the suit plaintiff on September 27, 1955, also filed a charge against defendant union with the National Labor Relations Board—that it was engaging in unfair labor practices (the same conduct alleged in the complaint) within the meaning of sections 8(b), subsections (1)(A) and (2) of the National Labor Relations Act—but on January 25, 1956, while the charge was under investigation by the board but before any ruling thereon plaintiff withdrew the same without prejudice. Defendant union then petitioned this court for a writ of prohibition to prevent the superior court from proceeding in plaintiff's action, on the ground that the subject matter was within the exclusive jurisdiction of the National Labor Relations Board.

Then pending in the California Supreme Court was *Garmon* v. *San Diego Bldg. Trades Council*; therein defendant union had sought from plaintiff employers an agreement to retain in their employ only those workers who were already members of the union or who applied for membership within 30 days; plaintiffs refused; thereupon, defendant union began peaceful picketing of plaintiffs' places of business to exert pressure on customers and suppliers in order to persuade them to stop dealing with plaintiffs. The lower court enjoined the union, and awarded $1,000 damages. At the time of suit in the court below, plaintiff employers had started a representative proceeding before the National Labor Relations Board; jurisdiction was declined by the board. The California

Supreme Court in December, 1955, (45 Cal.2d 657 [291 P.2d 1]), therein held that inasmuch as the board had declined to exercise its jurisdiction the state court had power over the dispute, although involving an unfair labor practice, and sustained the lower court's judgment granting injunctive relief and awarding damages against the union.

Thereafter, in April 1956, this court in the instant case in the writ proceeding (*International Sound Technicians* v. *Superior Court*, 141 Cal.App.2d 23 [296 P.2d 395]) held that since jurisdiction had not been declined by the board, the state court cannot act to enjoin unfair labor practices within the purview of the board and granted the writ as to the first cause of action; but denied the writ as to the five remaining causes seeking damages for the wrongful act of the defendant union in depriving him of his means of livelihood, on the theory of interference with plaintiff's common-law right to work. Petition for hearing in the Supreme Court was denied June 20, 1956. Thereupon, defendants interposed answers to the five remaining causes of action admitting defendant employers were engaged in industry affecting interstate commerce, the acts described in the complaint, if true, constitute unfair labor practices in violation of section 8 of the act, the National Labor Relations Board has never acted on the conduct alleged, and the same is within the exclusive jurisdiction of the board.

Meanwhile, on certiorari, the United States Supreme Court in *San Diego Bldg. Trades Council* v. *Garmon*, 353 U.S. 26 [77 S.Ct. 607, 609, 1 L.Ed.2d 618], reversed the state judgment for injunctive relief holding that the refusal of the board to assert jurisdiction did not leave with the states power over activities they otherwise would be preempted from regulating; and remanded the case to the state Supreme Court for further consideration of the local law issue in connection with the award for damages. On remand the California Supreme Court in 1958 (49 Cal.2d 595 [320 P.2d 473]), set aside the injunction but sustained the award of damages on the ground that the union's activities constituted "an actionable tort based upon an unfair labor practice under state law" (Cal. Civ. Code, §§ 1708, 1667; Cal. Lab. Code, §§ 923, 1115-1118) (p. 609); again the United States Supreme Court granted certiorari. Meanwhile, defendants in the instant case, anticipating a favorable decision in the *Garmon* case, reserved in the pretrial order (October 21, 1958) the right to raise the

issue of jurisdiction at the outset of the trial. Thereafter, in April 1959, the United States Supreme Court in *San Diego Bldg. Trades Council* v. *Garmon*, 359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775], reversed the damage judgment below.

On the basis of the *Garmon* case (359 U.S. 236) defendant union herein filed a motion for summary judgment, later deemed by the court to be a motion for judgment on the pleadings, seeking dismissal of the second and sixth causes of action (the third, fourth and fifth having previously been dismissed pursuant to stipulation in February 1958); the affidavit of Michael G. Luddy was filed therewith. The lower court granted the motion on the ground that jurisdiction over the subject matter was vested exclusively in the National Labor Relations Board, specifically relying upon *San Diego Bldg. Trades Council* v. *Garmon*, 359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775], as controlling, and rejecting *International Sound Technicians* v. *Superior Court*, 141 Cal.App.2d 23 [296 P.2d 395], as the law of the case. Only the two causes of action (second and sixth) are before this court.

According to certain allegations of the first cause of action, incorporated by reference in the two before us, the genesis of the within controversy began with numerous refusals of defendant union, between 1952 and 1955, to admit plaintiff to union membership and to permit defendant producers from employing plaintiff because he was not a union member. Plaintiff is a sound technician commonly known as a mixer; defendant union, as a collective bargaining agent, represents those engaged as sound technicians in the motion picture and amusement industry in respect to working conditions and terms of employment; defendant producers are engaged in the production of motion picture and television films, distribution and exhibition of the same in interstate commerce, and production of films employing sound technicians; defendant union entered into an agreement with defendant producers fixing the terms and conditions of employment of sound technicians, and by its terms every employee is required to be and remain a member in good standing in defendant union; during 1952 through 1955, plaintiff made numerous applications to defendant union for membership and offered to pay thereto all application and initiation fees and dues and comply with all rules and regulations of its constitution and by-laws; defendant union refused to admit plaintiff to membership.

Both the second and sixth causes of action sound in tort. As the subject of the second, plaintiff alleged that he accepted employment as a mixer with defendant Visual Drama Inc., commencing August 29, 1955; that on said day defendant union's business agent ordered defendant Visual Drama Inc. to terminate plaintiff's employment inasmuch as he was not a member of defendant union and had no work permit from it, and if it did not terminate plaintiff, defendant union would refuse to allow its members to work on the same job. Likewise in his sixth cause of action, plaintiff alleged that he accepted employment as a mixer with defendant Aerojet General Corporation and that on July 7, 1955, defendant union ordered defendant Aerojet General Corporation to terminate his employment for the same reasons, and if it did not do so defendant union would refuse to allow its members to work on the same job.

In connection with each cause of action plaintiff alleged, "that said action [of defendant union] was and is contrary to the National Labor Relations Act, section 8(a)(3), 8(b)(2), and further is in deprivation of the plaintiff seeking his livelihood in violation of California Civil Code, sections 43 and 51, and the Fifth Amendment to the United States Constitution and the Fourteenth Amendment of the United States Constitution. That as a proximate and direct result of said acts, plaintiff was discharged from his employment" (par. IV, second cause of action; par. II, sixth cause of action); and prayed for damages.

The acts alleged in the complaint, if true, and as specifically pleaded by plaintiff, constitute unfair practices in violation of section 8(a)(3) and (b)(2) of the National Labor Relations Act. By subsection (a)(3) of section 8 it is made an unfair labor practice for an employer to discriminate in regard to hire and tenure of employment or any terms or conditions of employment, or to encourage or discourage membership in any labor organization, except that an employer may enter into an agreement with a labor organization which is the collective bargaining agent of its employees by which membership in the union shall be a condition of employment. By subsection (b)(2) of section 8, it is made an unfair labor practice for a union to cause or attempt to cause an employer to discriminate against an employee to whom membership in the union has been denied on grounds other than failure to

tender periodic dues and the initiation fee uniformly required as a condition of acquiring or retaining membership.

The issue before us is whether, under the United States Supreme Court decision in *San Diego Bldg. Trades Council* v. *Garmon,* 359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775], the federal government has preempted jurisdiction over the controversy at bar. Appellant contends that the language in the *Garmon* case does not apply and that this court's decision in the writ matter in *International Sound Technicians* v. *Superior Court,* 141 Cal.App.2d 23 [296 P.2d 395], controls as the law of the case.

In April 1956, we ruled in *International Sound Technicians* v. *Superior Court,* 141 Cal.App.2d 23 [296 P.2d 395], that although the National Labor Relations Board has exclusive jurisdiction to prevent the unfair labor practices involved herein (*Garner* v. *Teamsters, Chauffeurs & Helpers Local Union,* 346 U.S. 485 [74 S.Ct. 161, 98 L.Ed. 228]), the state court has jurisdiction to hear and determine the issues in the damage actions on the ground that while they allege the union conduct to be in violation of the National Labor Relations Act, they are founded on tort based upon the common law and constitutional right to work, citing *United Const. Workers* v. *Laburnum Const. Corp.,* 347 U.S. 656 [74 S.Ct. 833, 98 L.Ed. 1025]. Three years after our decision, the United States Supreme Court in its second opinion in *San Diego Bldg. Trades Council* v. *Garmon,* 359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775], a tort action under general tort provisions of sections 1667, 1708, California Civil Code and sections 923, 1115-1118, California Labor Code, involving union activity constituting an unfair labor practice under section 8 of the National Labor Relations Act, and an unfair labor practice under state labor enactments—ruled that, "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by Section 7 of the National Labor Relations Act, or constitute an unfair labor practice under Section 8, due regard for the federal enactment requires that state jurisdiction must yield" (3 L.Ed.2d 775, 782), and held that, "[S]ince the National Labor Relations Board has not adjudicated the status of the conduct for which the State of California seeks to give a remedy in damages, and since such activity is arguably within the compass of Section 7 or Section 8 of the Act, the

State's jurisdiction is displaced" (p. 784) ; and reversed the judgment in damages below.

At the outset it should be noted that not only does the complaint fail to allege that the National Labor Relations Board has refused to assume jurisdiction of the unfair labor practices charged therein, or any facts from which it may be determined that the board would refuse jurisdiction if a charge against the union had been filed with it by plaintiff, but the affidavit of Michael G. Luddy asserts, and it is not denied by plaintiff, that on September 27, 1955, plaintiff filed a charge against defendant union with the National Labor Relations Board wherein he alleged that the union defendants have, and are, engaged in unfair labor practices within the meaning of section 8(-a)(2) and (b)(1) of the National Labor Relations Act, reciting the same acts set forth in plaintiff's complaint herein; but the charge` was withdrawn from the board by plaintiff on January 25, 1956, without prejudice, after an investigation had been made but before any ruling by the board. As in the *Garmon* case, *supra*, the National Labor Relations Board has not adjudicated the status of the conduct herein alleged.

Directing our attention to the pleadings, it has been specifically alleged in each cause of action, and plaintiff herein concedes, "that said action [union conduct] was and is contrary to the National Labor Relations Act, section 8(a)(3), 8(b)(2)"; and in addition that it *"further"* is in deprivation of plaintiff seeking his livelihood in violation of state statute and constitutional provisions—sections 43 and 51, Civil Code, and the Fifth and Fourteenth Amendments to the United States Constitution. While plaintiff has pleaded that the acts of defendant union constitute a tort under our Civil Code and the federal Constitution, for which he seeks damages, it is clear from the face of the complaint, and certainly not subject to argument, that the same union activity also constitutes an unfair labor practice under and contrary to section 8 of the act. ■■■ Thus it is apparent from the language of the Supreme Court in *Weber* v. *Anheuser-Busch, Inc.*, 348 U.S. 468 [75 S.Ct. 480, 99 L.Ed. 546], and *San Diego Bldg. Trades Council* v. *Garmon*, 359 U.S. 236 [78 S.Ct. 773, 3 L.Ed.2d 775], plaintiff having specifically pleaded the acts of defendant union to be contrary to section 8 of the Act, that he has brought his case directly within the purview of board jurisdiction; it is well settled that where the activity involved,

for which redress is sought, is within the jurisdiction of the National Labor Relations Board, state courts must defer to the primary jurisdiction of the board. (*Garner* v. *Teamsters, Chauffeurs & Helpers Local Union*, 346 U.S. 485 [74 S.Ct. 161, 98 L.Ed. 228].) As to when the activity comes within the board's jurisdiction, the Supreme Court has summarized the rule in *Weber* v. *Anheuser-Busch, Inc.*, 348 U.S. 468 [75 S.Ct. 480, at p. 488, 99 L.Ed. 546] : "But where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited by the federal Act, may be reasonably deemed to come within the protection afforded by the Act, the state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues in the first instance." This rule is restated in *San Diego Bldg. Trades Council* v. *Garmon*, 359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775, at p. 782] : "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by Section 7 of the National Labor Relations Act, or constitute an unfair labor practice under Section 8, due regard for the federal enactment requires that state jurisdiction must yield"; and again at page 783 [3 L.Ed.2d] : "When an activity is arguably subject to Section 7 or Section 8 of the act, the states as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."

The doctrine of federal preemption stated in the *Garmon* case has been followed by the court in two subsequent cases (*De Vries* v. *Baumgartner's Elec. Const. Co.* (1959), 359 U.S. 498 [79 S.Ct. 1117, 3 L.Ed.2d 976] ; and *Superior Court of Washington for King County* v. *Washington* (1960), 361 U.S. 373 [80 S.Ct. 400, 4 L.Ed.2d 380] ) ; and has since been consistently applied by state and federal courts in actions for statutory and common law tort not marked by threats of force and violence. In *Gallogly* v. *Bakery & Confectionery Workers Int. Union of America* (1960), 180 F.Supp. 778, the amended complaint in damages alleged that the company conspired with others to deprive plaintiffs of "the rights provided for in said National Labor Relations Act," charging a violation of section 8(a)(1) of the act (p. 782), and further, that the actions complained of constituted a tort under the common

law of Rhode Island. The pleading was before the court on a motion for judgment on the pleading. Citing *Weber* v. *Anheuser-Busch, Inc., supra,* the federal court stated at p. 782: ''In my opinion the amended complaint charges the Company with activities which are prohibited by said Act and which constitute unfair labor practices. The issues presented by the pleadings are therefore clearly within the jurisdiction of the National Labor Relations Board to hear and determine in the first instance.'' Although not a situation wherein the same act constituting a breach of a collective bargaining contract was also an unfair labor practice, and while finding that jurisdiction had not been preempted in controversies such as the one therein, the California Supreme Court in *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board* (1959), 52 Cal.2d 568 [343 P.2d 23], quoted extensively from the *Garmon* opinion, defined the term ''arguably'' used by Mr. Justice Frankfurter as ''susceptible of reasonable agreement'' (p. 584), and stated at page 587, ''The question is whether or not there is a conflict. If a conflict 'arguably' exists the state courts are deprived of jurisdiction. If it does not exist the state courts have jurisdiction. This was expressly so held in the Garmon case.'' Recently in *Consumer-Farmer Milk Cooperative, Inc.* v. *Milk Drivers & Dairy Employees Local No. 584,* 29 Misc.2d 691 [211 N.Y.S.2d 985], wherein a milk cooperative sought declaratory judgment of illegal activities by labor unions and that a clause of a collective bargaining agreement was illegal as in restraint of trade in violation of state antitrust laws, the court applied the doctrine of preemption stated in the *Garmon* case. So too by the Texas court in *Angell* v. *Wood, Wire & Metal Lathers Int. Union* (1959), 324 S.W.2d 83 (an action for damages for peaceful picketing and for attempting to deprive plaintiff of his right to seek gainful employment and ''pursue lawful enterprise'' in violation of public policy and constitution of Texas) and *Ex parte Dilley, Zea & Cooper* (1960), 160 Tex. 522 [334 S.W.2d 425]; by the Florida court in *North Dade Plumbing, Inc.* v. *Bowen* (1960), 116 So.2d 790 (complaint for damages for discrimination against union members), and by the Pennsylvania Supreme Court in *Wax* v. *International Mailers Union* (1960), 400 Pa. 173 [161 A.2d 603] (plaintiff in effect charged defendants with having committed an unfair labor practice) and *Bailer* v. *Local 470, International Teamsters, etc. Helpers,* 400 Pa. 188 [161 A.2d 343], in which the court said at p. 346 [161 A.2d],

"Appellant's allegations arguably amount to the unfair labor practice charge that the appellee Local has caused potential employers to discriminate against the appellant in regard to hire in order to cause him to be a 'good' union member. Such union conduct is arguably prohibited by Section 8 . . . and is thus subject to the primary jurisdiction of the N.L.R.B."

Plaintiff's allegation that, "said action was and is contrary to the National Labor Relations Act, Section 8(a) (3), 8(b)(2)," under the language of the *Weber* and *Garmon* decisions and the cases following, in effect constitute a jurisdictional statement and the issues presented thereby are clearly within the jurisdiction of the National Labor Relations Board to hear and determine in the first instance. Appellant contends however that the doctrine of federal preemption in the *Garmon* case does not here control because the union activity also constitutes a tort under common law and the relief sought is in damages, relying upon *International Union, U.A.A. & A.I.W.* v. *Russell*, 356 U.S. 634 [78 S.Ct. 932, 2 L.Ed.2d 1030], *United Const. Workers* v. *Laburnum Const. Corp.*, 347 U.S. 656 [74 S.Ct. 833, 98 L.Ed. 1025], and *International Sound Technicians* v. *Superior Court*, 141 Cal.App. 2d 23 [296 P.2d 395], citing the latter. It is true that the plaintiff also alleged in his complaint that the unfair labor practice further constitutes a wrongful interference with plaintiff's right to work in violation of sections 43 and 51, Civil Code, and the Fifth and Fourteenth Amendments to the federal Constitution, but this additional allegation does not aid state court jurisdiction. While the pleadings were not before the Supreme Court in *San Diego Bldg. Trades Council* v. *Garmon*, 359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775], it assumed, as the California Supreme Court had, "that the behavior of the petitioning unions constituted an unfair labor practice" (p. 783 [3 L.Ed.2d]) derived by the California courts from the facts as well as from their view of the National Labor Relations Act, and held that this was sufficient to render the union activity "arguably subject" to section 8, displacing state jurisdiction. The court therein relied upon *Weber* v. *Anheuser-Busch, Inc.*, 348 U.S. 468 [75 S.Ct. 480, 99 L.Ed. 546], wherein the additional allegation that the union conduct constituted a secondary boycott and conspiracy in restraint of trade under Missouri common law and conspiracy statutes, did not give the state court jurisdiction, the plaintiff having

also alleged that it constituted a violation of section 8 of the act. The *Weber* case was followed in *International Brotherhood etc., Local Union No. 25* v. *New York N. H. & H. R. Co.,* 350 U.S. 155 [76 S.Ct. 227, 100 L.Ed. 166], wherein it was alleged that the union acts constituted a violation of section 8 and that they also resulted in an unlawful secondary boycott in violation of the laws of Massachusetts. See *Gallogly* v. *Bakery & Confectionery Workers, Int. Union of America,* 180 F.Supp. 778, in which the complaint alleged that the activity complained of constituted a tort under the common law of Rhode Island as well as a violation of the Act; and the court therein citing *Weber* v. *Anheuser-Busch, Inc., supra*; *San Diego Bldg. Trades Council* v. *Garmon, supra,* and *De Vries* v. *Baumgartner's Elec. Const. Co.,* 359 U.S. 498 [79 S.Ct. 1117, 3 L.Ed.2d 976], rejected the same argument here made, that the rule of preemption is inapplicable because the activity complained of also constituted a tort under the common law of Rhode Island and the relief sought is for damages. The court therein found *International Union, U.A.A. & A.I.W.* v. *Russell,* 356 U.S. 634 [78 S.Ct. 932, 2 L.Ed.2d 1030], and *International Assn. of Machinists* v. *Gonzales,* 356 U.S. 617 [78 S.Ct. 923, 2 L.Ed.2d 1018], to be not applicable and held that inasmuch as the complaint charged activities which constitute unfair labor practices prohibited by the act, the issues are clearly within the jurisdiction of the board to hear and determine in the first instance.

Nor is this a case in which the activity sought to be regulated is "a merely peripheral concern of the Labor Management Relations Act" (*San Diego Bldg. Trades Council* v. *Garmon,* 359 U.S. 236 [79 S.Ct. 773, 782, 3 L.Ed.2d 775]); or where the potential conflict is "too contingent, too remotely related to the public interest expressed in the Taft-Hartley Act" (*International Assn. of Machinists* v. *Gonzales,* 356 U.S. 617 [78 S.Ct. 923, 2 L.Ed.2d 1018]), or where the conduct complained of involves only "somewhat indirectly an unfair labor practice" (*Grunwald-Marx, Inc.* v. *Los Angeles Joint Board,* 52 Cal.2d 568, 579-580 [343 P.2d 23]).

Appellant seeks to distinguish the *Garmon* case from the one at bar on the ground that the tort in the latter is based upon common law and in the former upon an unfair labor practice under state law. The fact is, contrary to appellant's claim that the tort in the *Garmon* case was only based upon an unfair labor practice under state labor law, that the union

activity therein (picketing plaintiffs' places of business to exert pressure on customers and suppliers to persuade them to stop dealing with plaintiffs in order to force plaintiffs to enter into a collective bargaining agreement) really involved, as the Supreme Court therein specifically pointed out, "both tort law of general application and specialized labor relations statutes" (footnote 3, p. 783) consisting of general tort provisions of the California Civil Code, sections 1667, 1708, as well as certain sections of the California Labor Code (pp. 779, 780) ; further, the tort in the case at bar is not predicated only upon common law but, as alleged, upon statutory tort law— California Civil Code, sections 43 and 51—and the Fifth and Fourteenth Amendments of the United States Constitution. Actually the distinction appellant tries to make is here of little significance. After deciding the conduct complained of in the *Garmon* case to be "arguably within the compass of . . . Section 8 of the Act" (p. 782) and that the state's jurisdiction is thus displaced, the Supreme Court stated (3 L.Ed.2d 775) at pp. 782, 783 : "Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the states to control which is the subject of national regulation would create potential frustration of national purposes," citing *Weber* v. *Anheuser-Busch, Inc.*, 348 U.S. 468 [75 S.Ct. 480, 99 L.Ed. 546] ; *United Auto, A. & A.I.W.* v. *Wisconsin Employment Relations Board*, 351 U.S. 266 [76 S.Ct. 794, 100 L.Ed. 1162] (footnote 3, pp. 782, 783).

Nor does the fact that the plaintiff seeks only monetary damages require a different conclusion. This too was raised in *San Diego Bldg. Trades Council* v. *Garmon*, 359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775], and the court said : "Nor is it significant that California asserted its power to give damages rather than to enjoin what the board may restrain though it could not compensate. Our concern is with delimiting areas of conduct which must be free from state regulation if national policy is to be left unhampered. Such regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy. Even the states' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities

that are potentially subject to the exclusive federal regulatory scheme. See *Garner* v. *Teamsters, Chauffeurs & Helpers Local Union*, 346 U.S. 485, 492-497 [74 S.Ct. 161, 98 L.Ed. 228, 240-243]. It may be that an award of damages in a particular situation will not, in fact, conflict with the active assertion of federal authority. The same may be true of the incidence of a particular state injunction. To sanction either involves a conflict with federal policy in that it involves allowing two law-making sources to govern. In fact, since remedies form an ingredient of any integrated scheme of regulation, to allow the State to grant a remedy here which has been withheld from the National Labor Relations Board only accentuates the danger of conflict'' (p. 784 [3 L.Ed.2d]).

██ The crux of the jurisdiction question in the case before us is not whether recovery is grounded on common law as distinguished from a statutory tort or one based on a state law of general jurisdiction or laws dealing specifically with labor relations, nor is it whether the action is one for damages or injunctive relief. These factors are not themselves the ultimate test of state court jurisdiction—the principal consideration is whether or not as in the *Garmon* case, *supra,* there is the possibility of conflict between state and federal policy—if there is, state law must be displaced no matter what remedy it provides. As stated by Mr. Justice Peters for the Supreme Court in *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board,* 52 Cal.2d 568 [343 P.2d 23], ''Conflict between state and federal jurisdiction, actual or potential, is the theme of Garmon'' (p. 585).

Appellant has referred this court to *United Const. Workers* v. *Laburnum Const. Corp.,* 347 U.S. 656 [74 S.Ct. 833, 98 L.Ed. 1025], and *International Union U. A. A. & A. I. W.* v. *Russell,* 356 U.S. 634 [78 S.Ct. 932, 2 L.Ed.2d 1030]. In the *Laburnum* case, *supra,* the court upheld state court jurisdiction to award damages for injury to plaintiff's business resulting from threats of violence, in spite of the assumption that the union activity also constituted an unfair labor practice under section 8(b)(1). Similarly in the *Russell* case the court upheld a state tort damage judgment against the union on *Laburnum* principles; it involved injuries caused by mass picketing and threats of violence. However these cases might heretofore have applied, it is now clear under *San Diego Bldg. Trades Council* v. *Garmon, supra,* that the court's decision in both *Laburnum* and *Russell* rested solely on the nature of the

activities there involved and the interest of the state in regulating them. The Supreme Court explained in detail its rulings in the *Laburnum* and *Russell* cases in *San Diego Bldg. Trades Council* v. *Gorman, supra,* at pages 784 and 785 [3 L.Ed.2d]; ''It is true that we have allowed the States to grant compensation for consequences, as defined by the traditional law of torts, of conduct marked by violence and imminent threats to the public order. *United Auto Workers* v. *Russell,* 356 U.S. 634 [78 S.Ct. 932, 2 L.Ed.2d 1030]; *United Const. Workers* v. *Laburnum Const. Corp.,* 347 U.S. 656 [74 S.Ct. 833, 98 L.Ed. 1025]. We have also allowed the States to enjoin such conduct. *Youngdahl* v. *Rainfair, Inc.,* 355 U.S. 131 [78 S.Ct. 206, 2 L.Ed.2d 151]; *United Auto, A. & A. I. W.* v. *Wisconsin Employment Relations Board,* 351 U.S. 266 [76 S.Ct. 794, 100 L.Ed. 1162]. State jurisdiction has prevailed in these situations because the compelling state interest, in the scheme of our federalism, in the maintenance of domestic peace is not overridden in the absence of clearly expressed congressional direction. We recognize that the opinion in *United Const. Workers* v. *Laburnum Const. Corp.,* 347 U.S. 656 [74 S.Ct. 833, 98 L.Ed. 1025), found support in the fact that the state remedy had no federal counterpart. But that decision was determined, as is demonstrated by the question to which review was restricted, by the 'type of conduct' involved, i.e., 'intimidation and threats of violence.' In the present case there is no such compelling state interest.'' It is obvious from the court's discussion in *Weber* v. *Anheuser-Busch, Inc.,* 348 U.S. 468 [75 S.Ct. 480, 99 L.Ed. 546], and the *Garmon* case, *supra,* that the holding in *Russell* and *Laburnum* is limited to controversies involving threats of violence and does not automatically extend to all awards of damages.

We deem *San Diego Bldg. Trades Council* v. *Garmon,* 359 U.S. 236 [79 S.Ct. 733, 3 L.Ed.2d 775], to be the controlling authority on the question before this court, and reject our prior opinion in that connection (*International Sound Technicians* v. *Superior Court,* 141 Cal.App.2d 23 [296 P.2d 395]) as no longer the law of the case. (*Standard Oil Co.* v. *Johnson,* 56 Cal.App.2d 411 [132 P.2d 910]; *Gore* v. *Bingaman,* 20 Cal.2d 118 [124 P.2d 17].) We conclude the state court is without jurisdiction to hear and determine the merits of the action and that it must defer to the jurisdiction of the National Labor Relations Board.

In his last contention appellant argues that in any event, under the Landrum-Griffin Act of September 14, 1959, (29 U.S.C.A. § 164), the state court has jurisdiction over the instant controversy. This Act by section 702 amended the Labor-Relations Management Act as to grant to the states jurisdiction over labor disputes which did not meet the National Labor Relations Board minimal standards in effect on August 1, 1959, and over which the National Labor Relations Board declined to assert jurisdiction. Appellant's argument is without merit—there is nothing in the Landrum-Griffin Act that makes it retroactive, nor should the statute be given a retroactive effect (*Smith* v. *General Truck Drivers, etc., Union Local 467*, 181 F.Supp. 14; *Robertson* v. *Banana Handlers Int. Longshoremen's Assn.*, 183 F.Supp. 423) ; and it is clear that the board has never declined to assert jurisdiction over the within controversy—the fact is that although plaintiff filed a charge against defendant union with the board on September 27, 1955, he withdrew the same on January 25, 1956, without prejudice, before the board had acted.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.