[Civ. No. 9925. Third Dist. Sept. 13, 1961.]

HOBBS-PARSONS COMPANY (a Corporation), Respondent, v. TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS LOCAL NO. 386 OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, etc., Appellant.

LeProhn & LeProhn and Robert LeProhn for Appellant.

Richard E. Macey for Respondent.

PEEK, J.—Defendant, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers Local Number 386 (hereinafter referred to as Local 386), appeals from an order granting a preliminary injunction by which said local was enjoined from taking any further action relative to informing the public and members of the retail and wholesale produce business that the employees of plaintiff, Hobbs-Parsons Company, were receiving lower wages and fewer fringe benefits than the employees represented by Local 386.

Plaintiff is a California corporation engaged in the wholesale produce business, distributing its produce to markets and stores located in various northern California counties, including markets and stores located in Stanislaus and Merced Counties. At the time this action was brought, plaintiff had a binding collective bargaining agreement with Local 439, also of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers.

Defendant Local 386 represents wholesale produce drivers employed by produce companies located in Stanislaus and Merced Counties. It represents none of the plaintiff's employees, nor does it seek to represent them.

Plaintiff brought this action after Local 386 sent letters to all the grocery stores within its territorial jurisdiction that purchased produce from plaintiff. The purport of this communication was to advise these grocery stores that Local 386 was about to commence an advertising campaign designed to

inform their patrons that they were selling produce delivered and supplied by plaintiff and that employees of plaintiff received lower wages and had fewer fringe benefits than employees represented by Local 386. The letter also stated that Local 386 did not intend to interfere with the normal operation of these various retail outlets, nor did it intend or desire to induce or encourage any work stoppage or other concerted refusal of employees to perform assigned work. A letter similar in tenor was sent to the various unions dealing with these retail outlets.

Plaintiff in its complaint alleged, among other things, that as a result of the letters sent out by Local 386, plaintiff's patrons had been intimidated, and because of such intimidation had ceased to and refrained from patronizing plaintiff's business, resulting in irreparable damage to plaintiff.

Defendants demurred generally to plaintiff's complaint and demurred specially on the ground that the trial court had no jurisdiction over the subject matter of the action. They further moved to strike certain portions of the complaint.

The trial court overruled the demurrer to the complaint, denied the motion to strike, and issued the preliminary injunction from which Local 386 now appeals. The order specifically restrained the local and its officers "from sending out any further letters or taking any action in furtherance or pursuance of said conduct referred to in said letter annexed to said complaint as Exhibit 'A' thereof, and cease intimidating plaintiff's customers from patronizing plaintiff's business, or take any action whatsoever that may be conducive to preventing plaintiff's customers from patronizing plaintiff's business, or any acts in support of said campaign against plaintiff or in intefering [*sic*] with plaintiff's normal business and contractual relations with its customers."

Since the preliminary injunction was issued, the National Labor Relations Board, at the request of Local 386, issued an Advisory Opinion holding that it would assert jurisdiction over the operations of plaintiff "with respect to labor disputes cognizable under Sections 8, 9, or 10 of the Act."

Section 8(b) 4 (B) of the National Labor Relations Act reads in part:

"(b) It shall be an unfair labor practice for a labor organization or its agents . . .

"(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an

industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport or otherwise, handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is . . .

"(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, . . . ." (29 U.S.C. § 158 (b)(4).)

It is questionable that the letters alone sent out by Local 386 would be deemed to be an unfair labor practice within section 8 of the act, in view of subsection (c) of section 8 which provides:

"(c) The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit." (29 U.S.C. § 158(c).)

Local 386 bases its appeal on the premise that since plaintiff's business affects interstate commerce, and since the conduct here in question is within the purview of the federal Labor Management Relations Act of 1947, as amended (Taft-Hartley Act, 29 U.S.C. §§ 141 et seq.), the state court had no jurisdiction over the subject matter.

Plaintiffs do not dispute the fact that the dollar volume of merchandise shipped to them from outside the state during the years immediately preceding this dispute was in excess of the "direct inflow" standard established by the National Labor Relations Board.

It is established that where activities are susceptible of reasonable argument to be unfair labor practices under section 8 of the National Labor Relations Act and also affect interstate commerce, the state must yield jurisdiction to the federal government. (*San Diego Bldg. Trades Council* v. *Garmon,* 359 U. S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775]; *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board,* 52 Cal.2d 568 [343 P.2d 23].)

Moreover, it has been held that until the National Labor Relations Board determines that activities susceptible

of reasonable argument to be unfair labor practices do not in fact constitute an unfair labor practice within the meaning of section 8 of the Act, the state is precluded to act. (*San Diego Bldg. Trades Council* v. *Garmon, supra.*)

In view of the record before us, that is, by virtue of defendants' demurrer, plaintiff's allegations must be deemed to be true; for a demurrer assumes the truth of the facts alleged which are legally provable. (39 Cal.Jur.2d, 189.)

Hence, we must assume as true the allegation by plaintiff that because plaintiff's patrons had been intimidated by the letter sent them by Local 386, they had ceased and refrained from doing business with plaintiff. As such, the present controversy is susceptible of reasonable argument to be an unfair labor practice within the meaning of section 8 of the National Labor Relations Act.

Moreover, the National Labor Relations Board, although expressing no opinion as to whether it would take jurisdiction over or render a decision on the merits of the controversy in question, stated that it would assert jurisdiction over the operation of plaintiff with respect to labor disputes cognizable under sections 8, 9, or 10 (§§ 158, 159 or 160) of the act. Hence, in view of the rule established in the *Garmon* case, we conclude that the Stanislaus County Superior Court has no jurisdiction in the present controversy until a hearing is had by the National Labor Relations Board.

The order granting a preliminary injunction is reversed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied October 13, 1961, and respondent's petition for a hearing by the Supreme Court was denied November 8, 1961.