[Civ. No. 20483. First Dist., Div. Two. May 16, 1962.]

HEAVY, HIGHWAY BUILDING AND CONSTRUCTION TEAMSTERS COMMITTEE FOR NORTHERN CALIFORNIA et al., Petitioners, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; CALIFORNIA DUMP TRUCK OWNERS ASSOCIATION et al., Real Parties in Interest.

LeProhn & LeProhn, Robert LeProhn, Brundage, Hackler & Flaum, Albert Brundage, McCarthy, O'Hara & Johnson, P. H. McCarthy, Jr., Neyhart & Grodin and Duane B. Beeson for Petitioners.

No appearance for Respondents.

Scott Elder, Pembroke Gochnauer, Samuel L. Holmes and Angell, Adams, Gochnauer, Elder & Holmes for Real Parties in Interest.

KAUFMAN, P. J.—Petitioners, the Heavy, Highway Building & Construction Teamsters Committee for Northern California, and the Western Conference of Teamsters, on behalf of their affiliated local unions, seek a writ of prohibition to restrain the respondent court from hearing action No. 507496, instituted by California Dump Truck Owners Association, an association of owner-operators, the real parties in interest, to enjoin the enforcement of certain provisions of a 1959 collective bargaining agreement between the union and the A.G.C., an association of contractors in the highway and construction industry in northern California. All members of

the A.G.C. are employers engaged in interstate commerce within the meaning of the National Labor Relations Act. (61 Stat. 140, 29 U.S.C.A. § 141 et seq.)

The specific provision relating to owner-operators, adopted on July 27, 1961, pursuant to the modification clause of the collective bargaining agreement, prescribed the terms and conditions which regulated the terms under which an owner-operator drove his equipment for an individual employer in the performance of work covered by the collective bargaining agreement.

The complaint of the real parties in interest alleged that the owner-operators were not parties to the collective bargaining agreement but were individuals and an association of individuals who owned dump trucks and drove themselves for the performance of transportation services, under a permit and regulation by the California Public Utilities Commission; that the owner-operator clause unlawfully interfered with their freedom to carry on business and constituted a violation of the Cartwright Act. Petitioners demurred to the complaint on the ground that the respondent court did not have jurisdiction over the subject matter as the provision of the contract relates to a right protected by the National Labor Relations Act. Petitioners' demurrer was overruled without opinion on October 20, 1961, and the petition for the writ ensued.

The question is whether the fact that the contract provision relating to owner-operators was contained in an agreement which was the fruit of the exercise of collective bargaining rights under the National Labor Relations Act precludes the respondent superior court from applying the Cartwright Act to prohibit application of the owner-operator provision to the real parties in interest.

It is well settled that where the trial court has determined that it had jurisdiction, prohibition will lie to prevent exercise thereof when jurisdiction is challenged in that court by demurrer, motion, plea or other objection of some kind (*Harden* v. *Superior Court,* 44 Cal.2d 630-634 [284 P.2d 9]). The writ is a necessary and proper method of obtaining relief under the circumstances (*Tide Water Assoc. Oil. Co.* v. *Superior Court,* 43 Cal.2d 815-820 [279 P.2d 35]).

The question here presented was recently decided by the United States Supreme Court in an almost identical fact situation in *International Brotherhood of Teamsters* v. *Oliver,* 358 U.S. 283 [79 S.Ct. 297, 3 L.Ed.2d 312], and *International*

*Brotherhood of Teamsters* v. *Oliver,* 362 U.S. 605 [80 S.Ct. 923, 4 L.Ed.2d 987]. In the *Oliver* cases, an owner-operator who leased and drove his vehicle in the service of an interstate carrier, challenged the validity of a substantially identical contract provision under the Ohio Antitrust Law. The court determined that the purpose of the owner-operator provision was not price fixing but wages and that (at pp. 294-297) : ''The regulations embody not the 'remote and indirect approach to the subject of wages' perceived by the Court of Common Pleas but a direct frontal attack upon a problem thought to threaten the maintenance of the basic wage structure established by the collective bargaining contract. The inadequacy of a rental which means that the owner makes up his excess costs from his driver's wages not only clearly bears a close relation to labor's efforts to improve working conditions but is in fact of vital concern to the carrier's employed drivers; an inadequate rental might mean the progressive curtailment of jobs through withdrawal of more and more carrier-owned vehicles from service. Cf. *Bakery Drivers Local* v. *Wohl,* 315 U.S. 769, 771 [62 S.Ct. 816, 86 L.Ed. 1178].

''. . . . . . . . . . .

''The goal of federal labor policy, as expressed in the Wagner and Taft-Hartley Acts, is the promotion of collective bargaining; to encourage the employer and the representative of the employees to establish, through collective negotiation, their own charter for the ordering of industrial relations, and thereby to minimize industrial strife. See *Labor Board* v. *Jones & Laughlin Steel Corp.,* 301 U.S. 1, 45 [57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352] ; *Labor Board* v. *American National Ins. Co.,* 343 U.S. 395, 401-402 [72 S.Ct. 824, 96 L.Ed. 1027]. Within the area in which collective bargaining was required, Congress was not concerned with the substantive terms upon which the parties agreed. Cf. *Terminal Railroad Assn.* v. *Brotherhood of Railroad Trainmen,* 318 U.S. 1, 6 [63 S.Ct. 420, 87 L.Ed. 571]. The purposes of the Acts are served by bringing the parties together and establishing conditions under which they are to work out their agreements themselves. To allow the application of the Ohio antitrust law here would wholly defeat the full realization of the congressional purpose. The application would frustrate the parties' solution of a problem which Congress has required them to negotiate in good faith toward solving, and in the solution of which it imposed no limitations relevant here. Federal law here created the duty upon the

parties to bargain collectively; Congress has provided for a system of federal law applicable to the agreement the parties made in response to that duty, *Textile Workers Union* v. *Lincoln Mills,* 353 U.S. 448 [77 S.Ct. 912, 1 L.Ed.2d 972]; and federal law sets some outside limits (not contended to be exceeded here) on what their agreement may provide, see *Allen Bradley Co.* v. *Local Union,* 325 U.S. 797 [65 S.Ct. 1533, 89 L.Ed. 1939]; cf. *United States* v. *Employing Plasterers Assn.,* 347 U.S. 186, 190 [74 S.Ct. 452, 98 L.Ed. 618]. We believe that there is no room in this scheme for the application here of this state policy limiting the solutions that the parties' agreement can provide to the problems of wages and working conditions. Cf. *California* v. *Taylor,* 353 U.S. 553, 566-567 [77 S.Ct. 1037, 1 L.Ed.2d 1034]. Since the federal law operates here, in an area where its authority is paramount, to leave the parties free, the inconsistent application of state law is necessarily outside the power of the State. *Hill* v. *Florida,* 325 U.S. 538, 542-544 [65 S.Ct. 1373, 89 L.Ed. 1782]. Cf. *International Union* v. *O'Brien,* 339 U.S. 454, 457 [70 S.Ct. 781, 94 L.Ed. 978]; *Amalgamated Assn.* v. *Wisconsin Employment Relations Board,* 340 U.S. 383 [71 S.Ct. 359, 95 L.Ed. 364, 22 A.L.R.2d 874]; *Plankinton Packing Co.* v. *Wisconsin Employment Relations Board,* 338 U.S. 953 [70 S.Ct. 491, 94 L.Ed. 588]. The solution worked out by the parties was not one of a sort which Congress has indicated may be left to prohibition by the several States. Cf. *Algoma Plywood & Veneer Co.* v. *Wisconsin Employment Relations Board,* 336 U.S. 301, 307-312 [69 S.Ct. 584, 93 L.Ed. 691]. Of course, the paramount force of the federal law remains even though it is expressed in the details of a contract federal law empowers the parties to make, rather than in terms in an enactment of Congress. See *Railway Employes' Dept.* v. *Hanson,* 351 U.S. 225, 232 [76 S.Ct. 714, 100 L.Ed. 1112]. Clearly it is immaterial that the conflict is between federal labor law and the application of what the State characterizes as an antitrust law. '. . . Congress has sufficiently expressed its purpose to . . . exclude state prohibition, even though that with which the federal law is concerned as a matter of labor relations be related by the State to the more inclusive area of restraint of trade.' *Weber* v. *Anheuser-Busch, Inc.,* 348 U.S. 468, 481 [75 S.Ct. 480, 99 L.Ed. 546]. *We have not here a case of a collective bargaining agreement in conflict with a local health or safety regulation; the conflict here is*

*between the federally sanctioned agreement and state policy which seeks specifically to adjust relationships in the world of commerce. If there is to be this sort of limitation on the arrangements that unions and employers may make with regard to these subjects, pursuant to the collective bargaining provisions of the Wagner and Taft-Hartley Acts, it is for Congress, not the States, to provide it.''* (Emphasis supplied.)

The owner-operators in the instant case, of course, contend that their case is distinguishable from the *Oliver* case because the subject matter of the contract affects their status as individual businessmen as it compels them to become employees of the contractors when they drive trucks for them and that as individual contractors, they are exempt from the act and that they cannot be made a party to a collective bargaining agreement. However, the identical argument was raised by the plaintiff Oliver in the *Ohio* case, *supra.* As indicated, the *Oliver* case necessarily implies that Oliver's status was immaterial and that the real issue was the subject matter of the collective bargaining agreement.

Furthermore, in the subsequent decision in the *Oliver* case at 362 U.S. 605, the Supreme Court commented that on remand the Ohio court set aside the prior order as applied to Oliver as a lessor-driver but continued the provision order in full force and effect as it applied to Oliver as lessor-owner and employer of drivers of his equipment, the Ohio court holding that the Supreme Court decision did not preclude an injunction against enforcement of the clause insofar as it required the carriers to use their own equipment and employees before hiring extra equipment. The Supreme Court held in *International Brotherhood of Teamsters* v. *Oliver*, 362 U.S. 605 [80 S.Ct. 923, 4 L.Ed.2d 987] that the applicable provisions are ''. . . at least as intimately bound up with the subject of wages as the minimum rental provisions we passed on then. Accordingly, as in the previous case, we hold that Ohio's antitrust law here may not 'be applied to prevent the contracting parties from carrying out their agreement upon a subject matter as to which federal law directs them to bargain.' '' (At p. 606.)

The owner-operator clause in the present case cannot be distinguished from that in the *Oliver* case. Thus, as the subject matter of the contract concerns wages, hours and other terms and conditions of employment upon which federal law directs the parties to bargain, the respondent court has no

jurisdiction to consider the cause. (*San Diego Bldg. Trades Council* v. *Garmon,* 359 U.S. 236, 244 [79 S.Ct. 773, 3 L.Ed.2d 775] ; *Calise* v. *Superior Court,* 159 Cal.App.2d 126, 132 [323 P.2d 859].) The subject matter of the controversy is one which the United States Supreme Court has determined is in the area of exclusive federal jurisdiction.

 While the record indicates that the collective bargaining agreement was to expire on April 30, 1962, we are satisfied we should not treat the question as moot. The question presented is one of continuing importance to the parties in their negotiations of future contracts. This is not a situation in which the parties are no longer interested in the legal issue involved. No purpose but delay would be served by treating the question as moot and the public interest in the orderly process of collective bargaining negotiations and in the orderly administration of justice compels a determination now (*DiGiorgio Fruit Corp.* v. *Department of Employment,* 56 Cal.2d 54 at 58-59 [13 Cal.Rptr. 663, 362 P.2d 487]). As a practical matter, this judgment has a direct bearing on the owner-operator provision in any new contract.

In view of the foregoing, it is ordered that a peremptory writ of prohibition issue forthwith, restraining the respondent court from hearing or taking any proceedings in superior court action No. 507496.

Shoemaker, J., and Agee, J., concurred.

The petition of the real parties in interest for a hearing by the Supreme Court was denied July 11, 1962. Traynor, J., was of the opinion that the petition should be granted.