[Civ. No. 10189. Fourth Dist., Div. One. Sept. 8, 1970.]

CALIFORNIA STATE COUNCIL OF CARPENTERS et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent; STROM DRYWALL CONTRACTORS, INC., et al., Real Parties in Interest.

COUNSEL

Levy & Van Bourg, Abe F. Levy and Howard Berman for Petitioners.

No appearance for Respondent.

Richard A. Perkins and Dudley Gray for Real Parties in Interest.

OPINION

WHELAN, J.—By their petition for a writ of prohibition, California State Council of Carpenters and its Orange County subsidiary (the union) challenge the jurisdiction of the Superior Court of Orange County (respondent court) to entertain and try an action there pending, #167366, brought by real parties in interest Strom Drywall Contractors and others (Strom) as plaintiffs against the union and others.

The complaint filed in action #167366 alleges that Strom is a party to a collective bargaining agreement between the union and California Drywall Contractors Association, of which Strom is a member, and which is named as a defendant. The agreement covers all members of the union engaged in the drywall industry within the State of California; its term is from August 1, 1968, to and including July 31, 1971.

The complaint further alleges the inclusion within the agreement of the following provisions:

"ARTICLE V

"STRIKES, LOCKOUTS

". . . The Union . . . shall have the right to withdraw or refuse to refer men with respect to any Contractor who has . . . violated the prohibition against . . . payment of piece rates or bonuses specified in this Agreement. . . . The withdrawal or refusal to refer men under the conditions specified in this Article shall not be deemed a violation of this Agreement. Any Contractor who believes that the Union has violated the provisions of this Agreement by withdrawing or refusing to furnish men as specified herein must exhaust the grievance and arbitration remedies provided in this Agreement."

The contract provided that there should not be any right to strike except as provided in Article V.

Article VII of the contract provided that the rates of compensation should be the hourly rates fixed by the contract, with some leeway for work-

men of exceptional skill. Compensation based upon piecework bonuses, units of production or work quotas are forbidden.

Article VIII provided in part:

"Section 1. Subject to the exceptions provided for in Article V of this Agreement, any dispute, grievance or question concerning the application or interpretation of this Agreement shall be determined in accordance with the provisions of this Article and the rules and procedures of the Joint Adjustment, Joint Arbitration and Joint Appeals Boards as they may be amended from time to time.

"Any grievance or dispute may be presented to the Joint Adjustment Board. . . .

"  . . . . . . . . . . . . . . . . . . .

"Wherever the Union has the right pursuant to the terms of this Agreement to withdraw or refuse to refer men such right shall co-exist with the right to proceed under any stage provided for under the provisions of this Article.

"  . . . . . . . . . . . . . . . . . . .

"Section 2. . . .

"  . . . . . . . . . . . . . . . . . . .

"j. The decision of the Joint Adjustment Board Panel, the Joint Appeals Board or the Joint Arbitration Board shall be final and binding upon the parties to this Agreement and shall have the effect of a legal judgment. The impartial arbitrator shall not have the authority to modify, vary, change, add to, or remove any of the terms or conditions of this Agreement."

Article XXI repeated the prohibition against compensation on a piecework basis. It then provided that should the Joint Adjustment Board, upon which the union and the employers have equal representation, find a violation of that provision, it should assess liquidated damage for each infraction, stating: "(6) . . . The parties recognize and acknowledge that proper payment of wages is essential to the maintenance of the Agreement, the health and safety of workmen, and fairness to all employees in the industry, and that it would be extremely difficult if not impracticable to fix the actual expense and damage to the workmen and the industry from any failure to pay wages in accordance with the provisions of this Agreement. Therefore, the amount of damage resulting from any such failure shall be presumed to be the sum of Two Hundred and Fifty Dollars ($250.00) for each infraction for each employee, for each week in which the infraction occurs. . . ."

The complaint in the court below alleged that the provision against piecework and for an hourly rate of wage as fixed by the contract had been waived and that petitioners should be estopped to attempt to enforce it; that the provision is contrary to public policy and void; that the provisions for permitting an award of liquidated damages was in fact for a penalty; and that the petitioners have failed and been unable to furnish workmen in adequate number and should not be permitted to enforce those provisions so long as they fail to perform their obligation to furnish workmen.

The complaint alleges additionally: "On and after June 2, 1969, plaintiffs have repeatedly called on the Unions to refer competent employees to them for work, but the Unions have always replied that they have no employees available to refer, and none have been referred. Also, a number of plaintiffs' employees who did report for work June 2, 1969, engaged in a slowdown and refused to perform a full day's work at contract hourly wage rates.

"The result of the foregoing developments is this: competent employees in sufficient numbers are not willing to work at contract hourly wage rates; the Union is evidently unable or unwilling to comply with its contractual obligation to furnish employees as needed; . . ."

After a hearing, a preliminary injunction issued by which the union was enjoined from: "(a) Threatening, attempting, or committing any act, or testifying before the 'Drywall Joint Adjustment Board' referred to in the 'Drywall Master Agreement,' a copy of which is attached to the complaint herein, or filing any declaration or application before said Board, in any proceeding against any of the plaintiffs herein arising out of any alleged violation of any of the paragraphs of Article XXI of said agreement, except Paragraphs 1 and 3 thereof; or

"(b) Withdrawing any employee from, or refusing to furnish or refer any men to, any of the plaintiff employers for any reason arising out of a claim that the plaintiff employer has violated the so-called prohibition against piecework, which is contained in Section 1 of Article XIV of said agreement; or

"(c) Taking any action in furtherance of the processing or collection of any now existing or outstanding penalties or orders made to this date by said 'Drywall Joint Adjustment Board' against any of the plaintiffs herein, which penalties or orders arose out of actual or alleged violations of any and all the paragraphs of Article XXI of the Drywall Master Agreement except paragraphs 1 and 3, and any actual or alleged violations of the so-called prohibition against piecework, which is contained in Section 1 of Article XIV of said agreement."

The petition alleges, which allegation is undenied, that Strom and California Drywall Contractors Association are employers subject to the jurisdiction conferred by statute on the National Labor Relations Board.

The response to the petition for prohibition sets up the matters alleged in the complaint in action #167366; among other additional matters, it alleges: "(c) The procedure of said purported arbitration tribunal is unfair in that counsel for the unions, whose accusations of contract violations are prosecuted against employers before said tribunal, also acts as attorney for said tribunal and has influenced said tribunal to accept his contention that the unions' noncompliance with their contractual obligation to supply competent workmen in sufficient number on request as needed is immaterial to a proceeding against an employer, so that any employer who is forced to pay contractually-excessive wages is automatically subject to the imposition of penalties as a contract violator, regardless of the pressures which he may be under as a result of the unions' noncompliance, the employees' wage demands, and his liability to others for performance of construction contracts . . .

". . . . . . . . . . . . . . . . . . .

"The instant petition for writ of prohibition ostensibly claims jurisdiction for other tribunals. Actually, however, its object is to take the controversy out of the rule of law entirely and subject it to union dictates, either directly imposed by means of economic coercion or (by a kind of elegant variation) registered by a private tribunal which cannot furnish effective relief and which in any event the unions control to their satisfaction."

If the content of the preliminary injunction reflects the purpose of the action in which it was granted, the plaintiffs therein have sought to prevent on the one hand a union-directed work stoppage or strike for a violation of the contract provisions against piecework and wage bonuses based on production, and on the other hand to prevent the operation of the procedures for arbitration of alleged violations of those provisions and for awards of damages for such violations.

■ Prohibition is a proper remedy to restrain the superior court from hearing or taking proceedings in a civil action to enjoin the enforcement of certain provisions relating to wages of a collective bargaining agreement, the parties to which are engaged in interstate commerce. (*Heavy, Highway Bldg. & Constr. Teamsters Committee* v. *Superior Court,* 203 Cal.App.2d 591 [21 Cal.Rptr. 840].)

■ In those areas of labor relations that are the subject of federal preemption, a writ of prohibition will issue to prevent a state court from enjoining union conduct which falls within the preempted area. (*Directors*

*Guild of America, Inc.* v. *Superior Court,* 64 Cal.2d 42 [48 Cal.Rptr. 710, 409 P.2d 934].)

The policy in this state is to favor arbitration. (*Firestone Tire & Rubber Co.* v. *United Rubber Workers,* 168 Cal.App.2d 444, 451 [335 P.2d 990]; *Myers* v. *Richfield Oil Corp.,* 98 Cal.App.2d 667, 671 [220 P.2d 973]; *United States Plywood Corp.* v. *Hudson Lbr. Co.,* 124 Cal.App.2d 527 [269 P.2d 93]; *Forrest* v. *Hotel Conquistador, Inc.,* 193 Cal.App.2d 503, 508 [14 Cal.Rptr. 349].)

■ Both federal and California law favor arbitration as the means to achieve industrial peace. (*Posner* v. *Grunwald-Marx, Inc.,* 56 Cal.2d 169, 180 [14 Cal.Rptr. 297, 363 P.2d 313]; *Leon Handbag Co.* v. *Local 213,* 276 Cal.App.2d 240, 242-243 [81 Cal.Rptr. 63].)

■ Where an employer is engaged in interstate commerce, the issue of the arbitrability of the dispute in question must be resolved by the application of the substantive federal law fashioned by the federal courts under the mandate of section 301 of the Labor Management Relations Act (29 U.S.C. § 185(a) (1964). (*Local 174, Teamsters, etc.* v. *Lucas Flour Co.,* 369 U.S. 95 [7 L.Ed.2d 593, 82 S.Ct. 571]; *Butchers' Union Local 229* v. *Cudahy Packing Co.,* 66 Cal.2d 925, 930-931 [59 Cal.Rptr. 713, 428 P.2d 849]; *Leon Handbag Co.* v. *Local 213, supra,* 276 Cal.App.2d 240, 241-242.) ■ Federal law ". . . commands a state court to order arbitration unless, after resolving all doubts in favor of that procedure, it can determine 'with positive assurance' that the dispute is not covered by the arbitration clause." (*Butchers' Union Local 229* v. *Cudahy Packing Co., supra,* at p. 927.)

The federal policy favoring arbitration of labor disputes goes so far as to declare that under a collective bargaining agreement providing for arbitration of grievances, where a right to strike is not specifically reserved to the union for claimed violation of an arbitrable contract term, a condition will be implied that there is no right to strike, and a strike called to enforce compliance with the term allegedly violated will give rise to a cause of action for damages enforceable in the state courts. (*Local 174, Teamsters, etc.* v. *Lucas Flour Co., supra,* 369 U.S. 95 [7 L.Ed.2d 593, 82 S.Ct. 571].)

In the case last cited the court stated: "[I]n a case such as this, incompatible doctrines of local law must give way to principles of federal labor law. We further hold, however, that application of such principles to this case leads to affirmance of the judgment before us.

"It was apparently the theory of the Washington court, that, although *Textile Workers Union* v. *Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, requires the federal courts to fashion, from the policy of our national labor laws, a body of federal law for the enforcement of collective bargaining agreements, nonetheless, the courts of the States remain free to apply individualized local rules when called upon to enforce such agreements. This view cannot be accepted. The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute. Comprehensiveness is inherent in the process by which the law is to be formulated under the mandate of Lincoln Mills, requiring issues raised in suits of a kind covered by § 301 to be decided according to the precepts of federal labor policy.

".   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"The collective bargaining contract expressly imposed upon both parties the duty of submitting the dispute in question to final and binding arbitration. In a consistent course of decisions the Courts of Appeals of at least five Federal Circuits have held that a strike to settle a dispute which a collective bargaining agreement provides shall be settled exclusively and finally by compulsory arbitration constitutes a violation of the agreement. The National Labor Relations Board has reached the same conclusion. *W. L. Mead, Inc.,* 113 N.L.R.B. 1040. We approve that doctrine. To hold otherwise would obviously do violence to accepted principles of traditional contract law. Even more in point, a contrary view would be completely at odds with the basic policy of national labor legislation to promote the arbitral process as a substitute for economic warfare. See *United Steelworkers* v. *Warrior & Gulf Nav. Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409." (82 S.Ct. at pp. 576, 577-578.)

The scope of the policy was enlarged in *Boys Markets, Inc.* v. *Retail Clerks Union, Local 770,* 398 U.S. 235 [26 L.Ed.2d 199, 90 S.Ct. 1583], which held that notwithstanding the Norris-La Guardia Act and the court's prior holding in *Sinclair Refining Co.* v. *Atkinson,* 370 U.S. 195 [8 L.Ed.2d 440, 82 S.Ct. 1328], the United States District Court, at the suit of an employer who desired to arbitrate a dispute, could enjoin a strike called in violation of the compulsory arbitration provisions of the collective bargaining agreement, which provided: " 'Matters subject to the procedures of this Article shall be settled and resolved in the manner provided herein. During the term of this Agreement, there shall be no cessation or stoppage of work, lock-out, picketing or boycotts, except that this limitation shall not be binding upon either party hereto if the other party refuses to perform any obligation under this Article or refuses or fails to abide by, accept or perform a decision or award of an arbitrator or board.' "

The power of the state courts to grant injunctive relief in such a situation had already been recognized. (*McCarroll* v. *L.A. County etc. Carpenters,* 49 Cal.2d 45 [315 P.2d 322]; cert. den. 355 U.S. 932 [2 L.Ed.2d 415, 78 S.Ct. 413].)

In the *Boys Market* case, *supra,* the court said: "As we have previously indicated, a no-strike obligation, express or implied, is the *quid pro quo* for an undertaking by the employer to submit grievance disputes to the process of arbitration. See *Textile Workers Union* v. *Lincoln Mills, supra,* at p. 455. Any incentive for employers to enter into such an arrangement is necessarily dissipated if the principal and most expeditious method by which the no-strike obligation can be enforced is eliminated. . . .

"Even if management is not encouraged by the unavailability of the injunction remedy to resist arbitration agreements, the fact remains that the effectiveness of such agreements would be greatly reduced if injunctive relief were withheld. Indeed, the very purpose of arbitration procedures is to provide a mechanism for the expeditious settlement of industrial disputes without resort to strikes, lock-outs, or other self-help measures. This basic purpose is obviously largely undercut if there is no immediate, effective remedy for those very tactics which arbitration is designed to obviate. . . .

" . . . . . . . . . . . . . . . . . . . . .

". . . We deal only with the situation in which a collective bargaining contract contains a mandatory grievance adjustment or arbitration procedure. Nor does it follow from what we have said that injunctive relief is appropriate as a matter of course in every case of a strike over an arbitrable grievance."

Strom's alleged cause of action in the court below should be examined preliminarily in its relationship to the statutory plan to promote compliance with voluntary agreements to arbitrate disputes between the contracting parties.

Code of Civil Procedure section 1281.2 provides in part as follows: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: (a) The right to compel arbitration has been waived by the petitioner; or (b) Grounds exist for the revocation of the agreement."

If, therefore, the union had filed with respondent court a petition under Code of Civil Procedure section 1281.2 to compel arbitration, Strom could

successfully have resisted such petition only by showing the existence of a waiver of the right to compel arbitration or that the agreement containing the arbitration provisions is itself subject to revocation.

■ A party to an agreement for arbitration may not, by taking the first step into court, obtain an injunction against the arbitration process unless he shows the existence of one of the grounds upon which he might have resisted a petition under Code of Civil Procedure section 1281.2 to compel arbitration.

■ A party to a collective bargaining contract calling for arbitration of disputes can waive the right to arbitration and it is for the court to determine whether there has been such waiver. (*Sawday* v. *Vista Irr. Dist.*, 64 Cal.2d 833, 836 [52 Cal.Rptr. 1, 415 P.2d 816]; *Local 659, I.A.T.S.E.* v. *Color Corp.*, 47 Cal.2d 189, 194 [302 P.2d 294]; *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board, Amalgamated Clothing Workers*, 192 Cal.App.2d 268, 277 [13 Cal.Rptr. 446]; *Squire's Dept. Store, Inc.* v. *Dudum*, 115 Cal.App.2d 320 [252 P.2d 418].)

It has not been any part of Strom's contention that the union has waived its right to proceed under the arbitration provisions of the agreement. Its claim of waiver is only as to the clauses prohibiting compensation on a piece-work basis.

Nor has Strom contended that the union has authored or inspired a strike. Whether, if the union elected to resort to its right to strike specifically reserved to enforce the clauses against piecework, it would thereby waive its right to have the question of violations of those clauses submitted to arbitration we do not attempt to pass upon.

Strom has not claimed that the collective bargaining agreement is subject to revocation, but seeks rather to enforce the no-strike provisions of the contract, claiming that a strike to enforce the clauses prohibiting piecework would be illegal because such clauses are illegal.

■ Where the basic contract is illegal, an award of arbitrators thereunder will be set aside. (*Loving & Evans* v. *Blick*, 33 Cal.2d 603 [204 P.2d 23].)

The alleged illegality of a contract provision against piecework and compensation based upon production is a main base of plaintiffs' alleged cause of action. In making such claim, however, plaintiffs have not claimed the entire contract to be invalid.

Our courts have held that the basis of the arbitral authority is a legal contract, and that a contract wholly illegal in its inception can confer no jurisdiction on arbitrators to enforce the contract terms. (*Loving & Evans* v.

*Blick, supra,* 33 Cal.2d 603, 610; *Franklin* v. *Nat C. Goldstone Agency,* 33 Cal.2d 628, 632 [204 P.2d 37].)

In *Loving & Evans* v. *Blick, supra,* the court said, at page 610: "[T]he power of the arbitrator to determine the rights of the parties is dependent upon the existence of a valid contract under which such rights might arise. [Citations.] In the absence of a valid contract no such rights can arise and no power can be conferred upon the arbitrator to determine such nonexistent rights. The question of the validity of the basic contract being essentially a judicial question, it remains such whether it is presented in a proceeding 'for an order directing . . . arbitration' under section 1282 of the Code of Civil Procedure or in a proceeding 'for an order confirming' or 'vacating an award' under sections 1287 and 1288 of said code. If it is presented in a proceeding under said section 1282 and it appears to the court from the uncontradicted evidence that the contract is illegal, the court should deny the petition 'for an order directing the parties to proceed to arbitration.' If it is presented in a proceeding under said section 1287 or 1288 and similar uncontradicted evidence is offered, the court should deny confirmation and should vacate any award granting relief under the illegal contract upon the ground that the arbitrator exceeded his powers in making such award."

■ In the preliminary stages arbitration under an illegal contract may not be ordered by the court. (*Bianco* v. *Superior Court,* 265 Cal.App.2d 126 [71 Cal.Rptr. 322].)

There is no reason to doubt that a party to such illegal agreement might obtain injunctive relief against threatened arbitration proceedings.

■ We are of opinion that illegality in a contract containing a provision for arbitration, in order to vitiate such provision, must be such as renders the entire contract illegal and unenforceable; and that a claim of illegality of one of the incidental clauses of the contract that falls short of affording ground for revocation of the contract is itself subject to arbitration.

■ The jurisdiction to pass upon the question of the illegality of a subordinate provision of the contract does not permit the making of an award the carrying out of which would require or permit the commission of a crime or an illegal act. (*Black* v. *Cutter Laboratories,* 43 Cal.2d 788 [278 P.2d 905]; *International Union, U.A.A. & A.I. Workers* v. *W. M. Chace Co.,* 262 F. Supp. 114, 117.)

In *Black* v. *Cutter Laboratories, supra,* 43 Cal.2d 788, an award of arbitrators made against an employer under a collective bargaining agreement was set aside because, as stated by the court: "[H]ere the very award itself is illegal in that it orders reinstatement as an employe of one whose dedication

to and active support of Communist principles and practices stands proved and unchallenged in the record. [P. 800.]

"....................

". . . A private employer, particularly one largely engaged in supplying manufactured products to the government, to its armed forces, and to retailers for distribution through hospitals and doctors to the public at large, should not be required by state action through its courts [citations] to retain in or restore to employment a person who would not be entitled to state employment and who is known to have dedicated herself to the service of a foreign power and to the practice of sabotage to the end of overthrowing our government." [P. 804.]

Thus in *Black* v. *Cutter Laboratories, supra,* it must have been within the competence of the arbitrators to refuse reinstatement because the discharged employee was engaged in communist activity.

*Pac. Fire etc. Bureau* v. *Bookbinders' Union,* 115 Cal.App.2d 111 [251 P.2d 694], has been cited as holding that the question of the illegality of a contract provision may not be the subject of arbitration. The case is not authority for that proposition. It held only that the question of the illegality of the contract provision was not among the issues submitted to the arbitrator, and that the National Labor Relations Board had exclusive jurisdiction of what are unfair labor practices under the National Labor Relations Act.

■■■ The question whether there is illegality in a subordinate clause of a contract containing provisions for mandatory arbitration is only a question of law.

Questions of law may be decided by arbitration. (*Lang* v. *Badger,* 157 Cal.App.2d 345 [320 P.2d 906]; *Morris* v. *Zuckerman,* 257 Cal.App.2d 91 [64 Cal.Rptr. 714]; *Crofoot* v. *Blair Holdings Corp.,* 119 Cal.App.2d 156, 185 [260 P.2d 156]; *Olivera* v. *Modiano-Schneider, Inc.,* 205 Cal.App.2d 9, 14 [23 Cal.Rptr. 30].)

In *Morris* v. *Zuckerman, supra,* 257 Cal.App.2d 91, 95, the court rejected the contention that a refusal to arbitrate was proper because the matter sought to be arbitrated, viz.: the right to partition real property, "as a matter of law . . . would not affect the future development of the property . . ."

In *Daly* v. *Komline-Sanderson Engineering Corp.,* 40 N.J. 175 [191 A.2d 37], there were explicitly involved the questions whether an award of attorney's fees made by arbitrators included an allowance of fees in obtaining a loan from a federal agency in excess of an amount permitted by the

rules of that agency, and whether the award included an allowance for services in a matter in which the attorney was disloyal to his client. The resolving of those issues of legality was held to be within the competence of the arbitrators.

The question whether there has been a violation of a no-strike clause is subject to arbitration. (*Charles J. Rounds Co.* v. *Joint Council of Teamsters,* 8 Cal.App.3d 830, 833 [86 Cal.Rptr. 825].)

Arbitrators may give equitable relief. (*Straus* v. *North Hollywood Hospital, Inc.,* 150 Cal.App.2d 306, 311 [309 P.2d 541].)

They may pass upon questions of the right to equitable relief such as rescission. (*Atlas Floor Covering* v. *Crescent House & Garden, Inc.,* 166 Cal.App.2d 211, 219 [333 P.2d 194].) Arbitrators may base their decisions on broad principles of justice and equity and every intendment of validity must be given the award. (*Grunwald-Marx, Inc.* v. *L.A. Joint Board,* 52 Cal.2d 568, 589 [343 P.2d 23]; *Case* v. *Alperson,* 181 Cal.App.2d 757, 761 [5 Cal.Rptr. 635].)

They may decide whether there has been a waiver of a certain provision of a contract. (*Grunwald-Marx, Inc.* v. *L.A. Joint Board, supra,* 52 Cal.2d 568, 576.)

The question whether the union has waived any provision of the contract other than the provision for arbitration itself is such a dispute as is subject to the arbitration procedure and within the competence of the arbitrators to decide.

It is equally an arbitrable dispute and one within the competence of the arbitrators to decide whether the union is estopped to attempt to enforce the clauses prohibiting piecework.

We proceed, however, to consider whether the provision against compensation based upon piecework is illegal or against the policy of the overall national plan for the promotion of collective bargaining to further industrial peace, and conclude that it is not.

*Scofield* v. *N.L.R.B.,* 394 U.S. 423 [22 L.Ed.2d 385, 89 S.Ct. 1154], explicitly recognizes that the elimination of piecework pay systems is an historic and legitimate union objective which does not violate the Taft-Hartley Act.

In *Scofield,* a union rule forbade union members to exceed a certain daily ceiling of compensation for piecework and provided a fine for violations. The rule was upheld. That ceiling was fixed by the collective bargaining agreement. The court noted: "The company has repeatedly sought an

agreement eliminating the piecework ceiling, an agreement which, had it been obtained, unquestionably would have been violated by the union rule. But the company could not attain this. Although, like the union, it could have pressed the point to impasse, *Fibreboard Paper Products Corp.* v. *National Labor Relations Board,* 379 U.S. 203, 209-215, 85 S.Ct. 398, 402-405, 13 L.Ed.2d 233 (1964), followed by strike or lockout, it has never done so. Instead, it has signed contracts recognizing the ceiling, has tolerated it, and has cooperated in its administration by honoring requests by employees to bank their pay for over-ceiling work. We discern no basis in the statutory policy encouraging collective bargaining for giving the employer a better bargain than he has been able to strike at the bargaining table. [89 S.Ct. at p. 1159.]

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

". . . Since Congress has addressed itself to the problem specifically and left a broad area for private negotiation, there is no present occasion for the courts to interfere with private decision. Indeed, there is no claim before us that the rule violates § 8 (b) (6). If the company wants to require more work of its employees, let it strike a better bargain. The labor laws as presently drawn will not do so for it.

"This leaves the possible argument that because the union has not successfully bargained for a contractual ceiling, it may not impose one on its own members, for doing so will discriminate between members and those others who are free to earn as much as the contract permits. . . . [89 S.Ct. at p. 1160.]

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"The union rule here left the collective bargaining process unimpaired, breached no collective contract, required no pay for unperformed services, induced no discrimination by the employer against any class of employees, and represents no dereliction by the union of its duty of fair representation. In light of this, and the acceptable manner in which the rule was enforced, vindicating a legitimate union interest, it is impossible to say that it contravened any policy of the Act.

"We affirm, holding that the union rule is valid and that its enforcement by reasonable fines does not constitute the restraint or coercion proscribed by § 8 (b) (1) (A)." [89 S.Ct. at p. 1161.]

The damages awarded may be pursuant to a provision for liquidated damages if the requirements of section 1741 Civil Code are met.

"[A] valid agreement may be made for the payment of liquidated damages, whereas an agreement for the payment of a penalty is invalid.

Under the law generally the parties are allowed to contract for liquidated damages if it is necessary to do so in order that they may know with reasonable certainty the extent of liability for a breach of the agreement. Where the parties exercise their business judgment in providing that it is impracticable and extremely difficult to fix the damages which may result from the defendant's failure to render its service such a provision is not controlling as to the actual difficulty in fixing damages, although it is entitled to some weight." (*Better Food Markets, Inc.* v. *American Dist. Tel. Co.*, 40 Cal.2d 179, 184 [253 P.2d 10, 42 A.L.R.2d 580].)

In determining under California law the question whether it is impracticable or extremely difficult to fix the actual damage (Civ. Code, § 1671), the trier of fact: ". . . should place itself in the position of the parties at the time the contract was made and should consider the nature of the breaches that might occur and any consequences that were reasonably foreseeable." (*Better Food Markets, Inc.* v. *American Dist. Tel. Co.*, 40 Cal.2d 179, 185 [253 P.2d 10, 42 A.L.R.2d 580].) (See also *McCarthy* v. *Tally,* 46 Cal.2d 577, 583 [297 P.2d 981].)

In *Maisel* v. *Sigman,* 123 Misc. 714 [205 N.Y.S. 807, 821], a collective bargaining agreement contained a clause fixing liquidated damages of $3,000 for a breach by the employer, which was awarded by the arbitrator provided for by the agreement. Of the employer's claim the liquidated damage clause was illegal, the court said: "The provisions of the nineteenth clause of the agreement fixing $3,000 as the amount of the liquidated damages in the event of a breach by plaintiff of the contract or agreement do not create a new liability on the part of the employer. They but liquidate a liability implied by law. Nor is there anything in that clause to exempt the union from its corresponding liability for breach of the agreement on its part. The only difference in the position of the two parties is that in one case the damage, being impossible of computation, is liquidated by agreement, while in the other the damage is left to be proven by computation. The parties have a right to enter into such an agreement, and the same is valid and binding upon them in the light of the surrounding circumstances."

Unlike California law, the law of the United States allows recovery of liquidated damages upon mere proof of an explicit contractual undertaking to that effect. (*Sun Printing & Publishing Assn.* v. *Moore,* 183 U.S. 642 [46 L.Ed. 366, 22 S.Ct. 240]; *Byron Jackson Co.* v. *United States,* 35 F. Supp. 665, 667.)

There is no federal policy against the liquidated damages provision in labor contracts. Under the Fair Labor Standards Act, in actions to recover unpaid minimum wages or unpaid overtime compensation, an em-

ployee is entitled to recover an additional equal amount as liquidated damages. (29 U.S.C. § 216(b).) The Supreme Court has stated that provision is not penal, but constitutes compensation for retention of a workingman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages. (*Brooklyn Sav. Bank* v. *O'Neil,* 324 U.S. 697 [89 L.Ed. 1296, 65 S.Ct. 895].) Their assessment does not violate due process. (*Overnight Motor Transp. Co.* v. *Missel,* 316 U.S. 572 [86 L.Ed. 1682, 62 S.Ct. 1216].)

■ Accordingly, we hold that unless it should appear as a matter of law that the provision for liquidated damages does not come within the criteria of section 1671 Civil Code, the arbitrators, rather than the court, in the first instance should pass upon the question whether it was impracticable or extremely difficult to fix the actual damages arising from a breach of the condition against compensation for piecework.

It cannot be said from the nature of the case that as a matter of law the criteria of Civil Code section 1671 have not been met. (See *Dyer Bros. Golden West Iron Works* v. *Central Iron Works,* 182 Cal. 588 [189 P. 445]; *Anaheim Citrus Fruit Assn.* v. *Yeoman,* 51 Cal.App. 759 [197 P. 959].)

The arbitrators may award damages against the union for breach of a contract obligation. (*Grunwald-Marx, Inc.* v. *L.A. Joint Board,* 52 Cal.2d 568, 590.)

■ If the arbitration provisions permit the submission of the employer's grievances, the arbitrators may award damages in his favor for breach of the contract. (*Drake Bakeries, Inc.* v. *Local 50, American Bakery,* 370 U.S. 254 [8 L.Ed.2d 474, 82 S.Ct. 1346].)

■ By the contract under scrutiny, any grievance or dispute may be submitted for arbitration.

It is clear from Article VIII, section 1(g) of the contract under consideration that a money award may be made against either party.

The crux of the controversy between Strom and the union may be whether the claimed failure of the union to furnish an adequate supply of workmen has resulted from the union's decision to act upon the right reserved in the first two sentences of Article V of the contract because of Strom's possible anterior violation of the prohibition against piecework, or whether there is merit in Strom's claim that the method of compensation by piecework has been forced upon the employers by the union's failure to supply workmen.

■ It is clear that the resolution of such a problem is one subject to the

arbitration procedure and within the competence of the arbitrators to decide.

It is of the very nature of the arbitration process that it should not be halted upon the claim the arbitrators will make an illegal award. It is only where grounds exist under Code of Civil Procedure section 1281.2 for the denial of arbitration that the court should interfere with the arbitration process before it has gotten under way.

There will then remain the question whether the award that might be made should be affirmed. ■■■ Apart from the specified grounds for denying a petition to arbitrate, any matter that might be thought to be cause to halt the arbitration process should properly be urged against the affirmance of the award when made.[1]

■■■ The quoted provision that the arbitrator shall not have authority to modify, vary, change, add to or remove any of the terms and conditions means only that the arbitrator is not to make a new contract for the parties. It cannot have the effect of divesting the arbitrator of discretion and of the duty and power to make decision.

The suggestion in response to the petition for writ of prohibition that the arbitration board was subject to the influence of the union's attorney is unsubstantiated.[2]

Nothing appears in the record before us to impeach the impartiality of any member of the arbitration board. (See *Cecil* v. *Bank of America,* 107 Cal.App.2d 38 [236 P.2d 408].)

Let a peremptory writ of prohibition issue as prayed for.

Brown (Gerald), P. J., and Ault, J., concurred.

A petition for a rehearing was denied October 2, 1970, and the petition of the real parties in interest for a hearing by the Supreme Court was denied November 5, 1970.

---

[1] "[I]f the court has erred in wrongfully construing the arbitration clause of the contract, or in assuming that the litigation grows out of that contract, this petitioner is afforded a complete remedy by appeal from the judgment which may subsequently be rendered upon application to affirm whatever award the arbitrator may make." (*Snyder* v. *Superior Court,* 24 Cal.App.2d 263, 271 [74 P.2d 782].)

[2] At the hearing on the application for preliminary injunction, the trial judge stated: "[A]s far as the determination of this proceeding is concerned you can assume that I feel that all is fair and square and equal and on the up and up and that there's no undue influence or improper advice or anything of that nature and that the arbitration agreement is at least for the purpose of this proceeding equitably written."