[Civ. No. 61032. Second Dist., Div. Three. Mar. 24, 1982.]

APPALACHIAN INSURANCE COMPANY, Plaintiff and Appellant, v. RIVCOM CORPORATION, Defendant and Respondent.

820

COUNSEL

Bogert; Ehrmann & Halpern, Irving L. Halpern and Frances Ehrmann for Plaintiff and Appellant.

Harney & Moore, William S. Hart and Michael F. Dillingham for Defendant and Respondent.

OPINION

AMERIAN, J.*—

FACTS

Respondent, Rivcom Corporation (Rivcom), applied to appellant, Appalachian Insurance Company (Appalachian), for a policy of fire insurance, to cover ranching property in Ventura County. Appalachian issued the policy effective March 8, 1979, with coverage in excess of $4.9 million.[1]

As required by Insurance Code section 2071, the section setting forth the standard form of fire insurance policy for the State of California, the policy contained a provision (Appraisal Clause) in lines 117 through 133 of the policy, entitled "Appraisal," which provided: "In case the insured and this company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of the insured or this company, such umpire shall be selected by a judge of a court of record in

---

*Assigned by the Chairperson of the Judicial Council.

[1] The policy numbered C4816 was issued with counter signature date of April 27, 1979. Rivcom's loss was suffered on March 30, 1979. The policy states that it replaces binder No. C4816.

the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally."

On March 30, 1979, 22 days after the effective date of the policy, Rivcom suffered a loss covered under the policy.

On July 2, 1979, Rivcom sent Appalachian a verified proof of loss, stating the loss to be $1,689,916. Appalachian rejected that amount as the loss.

On November 20, 1979, Appalachian demanded an appraisal under the policy provision and notified Rivcom of the appraiser selected by Appalachian.

Though counsel for Appalachian and counsel for Rivcom exchanged correspondence on the subject, no appraiser was designated by Rivcom. On February 29, 1980, Appalachian filed its petition to compel appraisal and on March 6 noticed a hearing on the petition. In the petition, Appalachian sought an order directing Rivcom to select an appraiser. Response of Rivcom was filed April 11, 1980. As an affirmative defense, Rivcom raised waiver by Appalachian of the right to appraisal because of bad faith dealings by Appalachian concerning settlement of the claim for loss.[2] The trial court denied the petition, citing as reasons:

"1. Article 1, Section 16 of the California Constitution provides the right to trial by jury which shall 'remain inviolate.'

"2. Code of Civil Procedure Section 592 provides, inter alia, facts to be tried by a jury 'money claimed ... as damages for breach of contract, or for injuries, *unless trial is waived....*' (italics added).

---

[2]In fact, on March 5, 1980, Rivcom and other plaintiffs filed a separate civil action (No. C 315254) naming Appalachian and others as defendants. The theories include breach of contract, breach of duty of fair dealing and good faith, breach of fiduciary duties, negligence and misrepresentation. All causes of action relate to the insurance policy and loss which are the subject of the instant case. By agreement between counsel, service of the action was withheld until Appalachian's petition could be heard.

"3. The Complaint for Damages (LASC C315254) filed by respondent indicated the desire of respondent to have all matters litigated in the court.

"4. A jury trial can not [*sic*] be waived implicity [*sic*]. Nothing in the petitioner's insurance contract indicates that the arbitration clause contained therein required by Section[s] 2070 and 2071 of the Insurance Code was 'bargained for.' No express waiver of a jury trial, therefore, has occur[r]ed.

"5. The arbitration clause in petitioner's contract therefore must be deemed to be subordinated to the right to trial by jury."

CONTENTIONS

Rivcom contends on appeal that the Appraisal Clause deprives an insured of the right to jury trial; that no order to appraise should be entertained while other issues are pending between the parties; that Appalachian cannot obtain specific performance of the Appraisal Clause because of its "unclean hands"; that Appalachian has not engaged in good faith dealings with its insured; that Rivcom was never notified of the Appraisal Clause;[3] that the insurance policy is a contract of adhesion; and that the insurance policy is ambiguous.

■ Appalachian contends that the Appraisal Clause does not deprive the insured of right to trial by jury, that the Appraisal Clause is a voluntary waiver of the trial by jury as to the amount of the loss and that the standard form fire insurance policy is not a contract of adhesion.

1. *Jury trial*

Insurance Code section 2070 provides, in part: "All fire policies on subject matter in California shall be on the standard form, and, except as provided by this article shall not contain additions thereto."

Insurance Code section 2071 is a legislative enactment which details the standard form of fire insurance policy for the state. The Appraisal Clause in the subject policy is identical in terms to the appraisal provision of the statute.

---

[3]This point was not raised in the trial court and cannot be raised for the first time on appeal.

As used in the Code of Civil Procedure, an agreement providing for an appraisal is included within the concept of agreements to arbitrate. (Code Civ. Proc., § 1280, subd. (a).) Under Code of Civil Procedure section 1281.2, a court shall order parties "to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: (a) The right to compel arbitration has been waived by the petitioner; or (b) Grounds exist for the revocation of the agreement."

California courts have enforced appraisal clauses in fire insurance policies for almost 100 years. In *Saucelito L. & D. D. Co.* v. *C. U. A. Co.* (1884) 66 Cal. 253 [5 P. 232], the plaintiff insured suffered fire loss and brought suit against the insurer. The policy contained a clause which provided "X. That in case of difference of opinion as to the amount of loss or damage, such difference shall be submitted to the judgment of two disinterested and competent men, mutually chosen (who in case of disagreement shall select a third), whose award shall be conclusive and binding on both parties." (66 Cal. at p. 255.)

After loss, a difference arose as to the amount of loss. Each side selected a person to arbitrate the amount of loss. They met but were unable to agree upon the amount of loss and failed to select a third person to assist in determining the amount.

Plaintiff brought suit for the loss under the policy. The court affirmed a judgment in favor of defendant, stating, ". . . it is the clear meaning of the contract that if the amount of loss cannot otherwise be adjusted to the satisfaction of the parties, it shall be adjusted by the mode of arbitration therein prescribed, and that until such adjustment, or a fair effort on the part of the insured to obtain it, no cause of action arose." (66 Cal. 253, at pp. 258-259.)

By the time the appraisal procedure was evaluated in *Hyland* v. *Millers Nat. Ins. Co.* (9th Cir. 1937) 91 F.2d 735, the California Legislature had adopted Statutes 1909, chapter 267, pages 404-408 (predecessor to Ins. Code, § 2071).

The *Hyland* court commented, "The principle of adjustment of claims arising under the insurance policies by arbitration, in which each of the parties chooses an arbitrator or appraiser, and a third, an umpire, is, in turn, chosen by them, was very early established in the great enterprise of fire insurance. Such a beneficent substitute for the compli-

cated and time-consuming processes of common law has been recognized by all the courts. Nowhere has its obvious requirement of integrity on the part of the parties in this quasi judicial process of arbitration been more clearly recognized than in the courts of the State of California, under whose laws the policies before us must be construed." (*Id.* at p. 737.)

This established and court-approved statutory procedure is challenged by Rivcom, as depriving it of its right to jury trial. It must be kept in mind that the *only* thing that the appraisers do is to set the amount of loss under the policy. Even if the Appraisal Clause is specifically enforced, Rivcom retains its opportunity to pursue its separate civil action (case No. C 315254) against all defendants named and on all theories stated therein. If the provision for fixing the amount of loss is followed and Appalachian does not pay the amount, Rivcom might maintain a separate action based on such failure.

Thus, Rivcom is not without jury trial rights. It simply has no jury trial right as regards the setting of the dollar amount of the loss under the policy, where the Legislature has established a standard form of policy providing for a particular procedure to be followed in one narrow aspect of the claim process. To hold otherwise would be to do violence to a longstanding and well settled body of law, where there is no reason to do so.

2. ▮ *Waiver*

Code of Civil Procedure section 1281.2 requires that an arbitration agreement be specifically enforced unless petitioner has waived the right or grounds exist for the revocation of the agreement. In its response, Rivcom limits its affirmative defense to waiver.

The order of the trial court makes no reference to any waiver by Appalachian of its right to arbitration. Indeed, the correspondence between counsel shows that as early as November 20, 1979, less than five months after receipt of the proof of loss, Appalachian asserted its right under the Appraisal Clause and designated Mr. Sidney Greenspan as its appraiser. Because Rivcom was changing counsel, Appalachian, on January 17, 1980, extended to Rivcom's counsel "whatever additional time you feel is necessary in order to make" its selection of appraiser.

No conduct of Appalachian or its representatives in this regard would support a finding of waiver by it.

Rivcom, however, urges that Appalachian's waiver can be established by the manner in which Appalachian investigated the claim filed with it. In essence, Rivcom contends that because there was a filed proof of loss in the sum of $1,689,916 and the insurer paid $230,000 in partial settlement, this, in and of itself, shows bad faith on Appalachian's part. The problem with this argument is that until the amount of the loss is fixed (under the Appraisal Clause) no one is in a position to evaluate the bad faith claim.[4] There has been no waiver of Appalachian shown here.

### 3. *Unclean Hands*

Rivcom urges that the conduct of Appalachian, subsequent to the claimed loss under the policy, should bar Appalachian from resort to the courts to enforce the Appraisal Clause and establish the amount of the loss. In support of its contention, Rivcom cites *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809 [169 Cal.Rptr. 691, 620 P.2d 141]. In *Egan* the Supreme Court held that " . . . an insurer may breach the covenant of good faith and fair dealing when it fails to properly investigate its insured's claim." (*Id.* at p. 817.)

From the pleadings in the instant case we know simply that the loss occurred March 30, 1979; that Rivcom's proof of loss was sent in on July 2, 1979; Appalachian's request to Rivcom to select an appraiser was November 20, 1979. There is nothing in the record from which the trial court could conclude either that Appalachian had or had not failed to investigate Rivcom's claim. In fact, the trial court made no findings on this issue.[5]

Neither *Egan* nor any other case cited to us holds that, separate from waiver, the right to enforce an Appraisal Clause can be lost by the conduct of a party to such clause, after the loss has occurred. Because there is no evidence in this record of conduct by Appalachian after the date of loss, we need not reach this issue.

---

[4]Perhaps the appraisers will fix the amount of loss consistent with the amount shown in the proof of loss. On the other hand, it may develop that the appraisers fix the amount of loss at $250,000, of which $230,000 has already been paid. What the appraisers will do is entirely speculative until they do their work.

[5]The issue of insurer's breach of implied duty of good faith and fair dealings towards its insured is the subject of the separate suit, No. C 315254, brought by Rivcom and other plaintiffs against Appalachian and other defendants. The ruling in *Egan* v. *Mutual of Omaha Ins. Co., supra,* may be applicable to that separate suit as the facts are developed there.

## 4. ▮ *Ambiguity in the Policy*

Rivcom contends that there is an ambiguity in the policy provisions.[6] The clauses called into question are the Appraisal Clause and the "Service of Suit" provision, section 11.

The "Service of Suit" provision states: "(a) It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company, at the request of the insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

"(b) It is further agreed that: 1. Service of process in such suit may be made upon the Insurance Commissioner, Superintendent or Director of Insurance or other Officer specified for that purpose or his successor or successors in office, and that in any suit instituted against any one of them upon this contract, this Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal. 2. The above stipulated Officer shall forthwith mail the documents of process served or a true copy thereof to Mr. H. S. Hirst, Secretary, Appalachian Insurance Company, P.O. Box 7500, Johnston, Rhode Island, 02919.

"(c) The above-named is authorized and directed to accept service of process on behalf of this Company in any such suit and/or, upon the request of the Insured, to give a written undertaking to the Insured that it or they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

"(d) Further, pursuant to any statute of any State, Territory or District of the United States of America which makes provision therefor, this Company hereby designates the Superintendent, Commissioner or Director of Insurance or other Officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action,

---

[6]Although the ambiguity issue was argued before the trial court, the minute order of June 26, 1980, denying petitioner's motion, does not mention the ambiguity of the policy as one of the reasons for the denial.

suit or proceeding instituted by or on behalf of the Insured or any bene-
ficiary hereunder arising out of this contract of insurance and hereby
designate the above-named as the person to whom the said officer is au-
thorized to mail such process or a true copy thereof.

"(e) The foregoing shall supersede any contrary provision contained
elsewhere in this policy."

Rivcom urges that by submitting to the jurisdiction of the courts in
section 11, Appalachian has lost the opportunity to utilize the mecha-
nism established in the Appraisal Clause to have the amount of the loss
determined. The problem with this argument is that there is no connec-
tion between the two clauses.

The Appraisal Clause provides the device to be utilized to determine
the amount of loss if the parties cannot agree on that amount. Once the
amount of the loss has been fixed, whether by agreement between insur-
er and insured or by appraisal procedure, if the insurer refuses to pay
such amount the service of suit section 11 provisions become instructive.
There is no ambiguity between the provisions.

5. ■ *Adhesion*

Rivcom seeks to avoid the appraisal provision by asserting it to be
part of an insurance policy which, itself, is a contract of adhesion.

In *Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807 [171 Cal.Rptr.
604, 623 P.2d 165], the Supreme Court considered an arbitration clause
in a contract concerning personal services to be performed by union mu-
sicians. The union to which the musicians belonged was designated by
the clause as sole arbitrator of disputes.

In holding the contract to be one of adhesion, the court stated that
even an adhesion contract should be examined further before an arbi-
tration provision is to be deemed unenforceable. This detailed examina-
tion includes consideration of (1) whether the provision falls within the
reasonable expectation of the weaker party (if not, it will not be en-
forced against that party), and (2) whether the provision is unduly
oppressive or unconscionable (if so, it will not be enforced). (*Id.* at
p. 820.)

The court also noted, "[W]hen it can be demonstrated, however, that
the clear effect of the established procedure of the arbitrator will be to

deny the resisting party a fair opportunity to present his position, the court should refuse to compel arbitration." (*Id.* at p. 826.)

In a cautionary footnote, the court commented: "Enforcement of an agreement to arbitrate should be denied on this ground, we think, only in the clearest of cases, i.e., when the applicable procedures essentially preclude the possibility of a fair hearing. In all other cases the matter should be permitted to proceed to arbitration. If, in the course of arbitration proceedings, the resisting party is actually denied a fair opportunity to present his position, ample means for relief are available through a subsequent petition to vacate the award. (See Code Civ. Proc., §§ 1285.8, 1286.2, subd. (e).) (See and cf. *California State Council of Carpenters* v. *Superior Court* (1970) 11 Cal.App.3d 144, 162-163 [89 Cal.Rptr. 625].)" (*Id.* at p. 826, fn. 23.)

Rivcom has made no showing that there is anything at all suspect in the selection process provided for in policy No. C4816. Thus, even if the policy is to be viewed as a contract of adhesion, the appraisal provision is enforceable under the principles of *Graham.*

6. ■ *Effect of Pendency of Case No. C315254*

Rivcom contends, finally, that because it is one plaintiff in a separate lawsuit naming Appalachian and others as defendants, which suit was filed five days after Appalachian filed this petition, the order to select an appraiser should be delayed.

In support of this contention Rivcom cites *Ross* v. *Blanchard* (1967) 251 Cal.App.2d 739 [59 Cal.Rptr. 783]. The *Ross* case is clearly distinguishable. In *Ross* the court considered the viability of an attachment by a party to an arbitration agreement, where the party filed suit and attached property without resorting first to arbitration. In the answer, defendant raised the existence of the arbitration agreement as a defense and prevailed on that defense. The parties were ordered to arbitration. The court observed that the existence of the arbitration agreement did not oust the courts from the scene. There was nothing to prevent the filing of the civil action. The existence of the arbitration clause was observed to be a matter to be raised by defendant.

Here Rivcom is a party to an action against Appalachian. The issues in that case (see fn. 2 above) are unrelated to the narrow request of Appalachian in this proceeding—that Rivcom designate an appraiser under the policy.

## Disposition

The judgment of the trial court is reversed and the case is remanded with direction to enter judgment in favor of Appalachian.

Klein, P. J., and Lui, J., concurred.